6 WS 209
25 SC ²276

## Street *against* The Commonwealth.

Under the Acts of 15th April 1834 and 2d July 1839, in case of a contested election of an assessor or assistant assessor, the Quarter Sessions are to decide whether there is a vacancy; and if they find there is, the County Commissioners are to appoint a person to fill the office: that court has no power to order a new election.

An Act of Assembly will not be construed to repeal by implication an express enactment, unless there be a clear and strong inconsistency between them.

ERROR to the Common Pleas, of *Philadelphia* county.

Commonwealth *ex relatione* Henry Shuster against Emanuel Street. This was a *quo warranto* issued on the suggestion of Shuster that he was elected assessor of the Fourth Ward, Spring Garden, against Street, to show by what authority the latter exercised that office. The defendant in his answer claimed the office on the ground that a vacancy existed on the 1st May 1843, upon which the county commissioners appointed him, and he was duly qualified. The Commonwealth demurred specially to that part of the answer alleging vacancy, because it did not state how it was occasioned. On this demurrer judgment was given for the Commonwealth. The defendant made further answer that the election holden at the regular time, viz., the third Friday of March 1843, was set aside by the Court of Quarter Sessions, and hence the vacancy; whereupon the commissioners of the county appointed him. The Commonwealth replied that after setting aside said election, the said court ordered a new election to be holden the third Friday of May 1843, at which last-named election the relator was chosen. On demurrer to this replication by the defendant, judgment of ouster was given against him.

Errors assigned:

1. The court erred in giving judgment for the Commonwealth upon the special demurrer.

2. In giving judgment of ouster against defendants.

*H. M. Phillips* and *Dallas*, for plaintiff in error. It will be urged that under the provisions of the 155th section of the Act of 2d July 1839 (*Purd.* 363, *6th ed.*), which gives the Quarter Sessions, in case of a contested election of a township officer, all the powers conferred by that Act upon committees of the Legislature, that court has power, when it sets aside an election, to order a new one. But the Act gives the committees no such power. All they have to do is to declare the election of a member valid or invalid. By art. 1, sect. xx. of the constitution, the speaker is to issue his

VI. — 27    · s *

writ of election to fill vacancies in either house. Unless then the court construe an express provision to be repealed by implication, which they will not do, the power given to the county commissioners by the 87th section of the Act of 15th April 1834 (*Purd.* 992) to appoint an assessor in case of a vacancy, was properly exercised by them, and the Quarter Sessions had no power to order a new election. Moreover, the fiscal concerns of the county demand the speedy appointment of an assessor, and would manifestly suffer from the inevitable delay of successive elections.

*Clarkson,* contra, asked the court to affirm the judgment on the authority of *Barton* v. *Wells,* (5 *Whart.* 225), as but part of the record had been returned; but the court intimated that the point of the case was sufficiently raised by the record presented. He then contended that the 87th section of the Act of 1834 empowered the county commissioners to appoint an assessor only where a vacancy existed, and did not embrace the present case of an illegal and void election. There is no vacancy here; the existing assessor is to serve until another is elected or appointed. But if this were a case in which the county commissioners were authorized by that Act to appoint an assessor, that power is taken away by the 155th section of the Act of 1839, which gives the Quarter Sessions, in case of an undue election or false return, all the powers conferred by it in the 142d, 5th, 6th and 9th sections, upon committees of the Legislature, in case of an undue election of a member, viz., to declare such election invalid, and order a new one.

The opinion of the Court was delivered by

HUSTON, J.—This case is brought to this court to decide whether, in case of an omission to elect an assessor, or in case of a contested election which shall be declared void, the commissioners shall appoint an assessor, or there shall be another election for an assessor. On the 15th April 1834 a law was passed, intended to be a complete system as to assessment of county and township taxes, and as to the election or appointment of county and township officers. I shall consider how this matter would have stood under that law, and then what alterations, if any, have been made by subsequent laws. Sect. 81. The assessors and assistant assessors were to be elected at the time inspectors were chosen for the general election, in October of each year. The election of all other township officers was to be in March of each year. Within six weeks from the general election in October of each year, the commissioners were to issue their precept to the assessors of the respective townships, wards and districts, (this time as to the city of Philadelphia, by a subsequent Act of 31st March 1836, is limited to thirty days,) commanding them to make out within thirty days a just and perfect list of taxable property and taxable persons,

After some very precise directions as to how this shall be done, it directs that the assessors and assistants shall value all the property assessed, and then the several assessors shall convene at the office of the commissioners of the proper county, on a day to be appointed by the commissioners, to consult and adjust their respective valuations and returns.   The commissioners shall then adjust the sum to be levied and collected in each ward.   The commissioners shall transmit to each township or ward accurate lists of such valuation, with the rate per cent. and the day of appeal.   This is to be sent to each township, ward or district, on or before the second Monday of April.   Then within ninety days of the middle of October, that is, by the middle of January, the assessors' first list is to be completed.   The assistant assessor and assessor are to put a valuation, and on a day to be fixed by the commissioners, the assessors are to meet them to adjust the respective valuations. Say thirty days for this, and we are at the middle of February. At this time the commissioners are to proceed to assess the amount to be levied on each township, ward or district, and what proportion of that shall be laid on each farm, house, lot, mill, &c., and on each trade and office, and on each single freeman, and make a fair transcript of this for each township, &c., and transmit it, together with the time of the appeal, before the second Monday of April, leaving about six weeks in which to go through these last-mentioned matters; that is, if no days have been lost by neglect or sickness of any person.

It will be observed that until the valuation of every township, ward and district is before the commissioners, and thus they know the amount of the valuation of each, they cannot proceed to assess the amount to be levied in any one.   The Legislature were aware of this, and in the 83d section it is provided that if the township shall fail to choose any township officer, other than assessor or assistant assessor, or if any person elected to such office shall neglect or refuse to serve, or if any vacancy shall happen by death or *otherwise*, the Court of Quarter Sessions may appoint a suitable person to fill such office until the next annual election.   The 87th section says, if any township shall fail to choose an assessor or assistant assessor at the time appointed by law, or if any person elected to such office shall neglect or refuse to serve therein, or if any vacancy shall happen by death or *otherwise*, the commissioners of the county shall appoint a person to fill said office, who shall have all the powers, &c., as if he had been elected thereto.   Under this last law, then, there was an express provision; and if we understand the words "fail to elect," to embrace a case of void election, and the words "vacancy by death or otherwise" to include vacancy from every possible cause, there can be no dispute as to the power of the commissioners: and we need not resort to the strong inference from the necessity of a speedy appointment. It will be observed, also, that as to township officers a second

election was not to be held in any case; for as to all other town-
ship officers except assessors and their assistants, the Quarter Ses-
sioners were to appoint.   But in this law there was no provision
for trying a contested election; and a subsequent Act made for
that purpose is alleged to control the provisions of this Act of 15th
April 1834.

On the 2d July 1839, an Act was passed relating to the elections
in this Commonwealth.   The 153d section gives to the Court of
Quarter Sessions power to hear and determine in all cases where
the election of any county or township officer is contested.   The
155th section gives to that court the power to compel the attend-
ance of the officers of the election, and all other persons capable
of giving information, and to compel the production of tally lists,
&c.; and shall have all the powers conferred on the committees
of the Legislature by the provisions of this Act.   To ascertain
these powers, we are referred to the 142d, 145th, 146th and 149th
sections of the law; and we find the same powers in the same
words as to sending for and compelling the attendance of witnesses
and production of papers and documents.   And first, as to the com-
mittee on the governor's election.   If they find the election invalid,
a new election is to be had on the second Tuesday of the next
October, according to the directions of the constitution; of which
not the committee, but the speakers of Senate and House of Re-
presentatives, are to give notice.   As to members of either branch
of the Legislature, if they find the election invalid, a new election
is to be held in the manner hereinbefore provided to fill vacancies.
That is, the speaker of the House is to issue his warrant for an
election.

We find then no power in the committee to order an election.
The vacancy from an invalid election is to be filled as any other
vacancy; and that depends on other laws and the constitution.
Is not then the power of the Quarter Sessions, in case of a con-
tested election, to decide whether there is a vacancy; and if they
find one, that vacancy is to be filled as expressly provided by for-
mer laws.   That is, in every case except assessors and assistants,
the Quarter Sessions is to appoint, and the commissioners to ap-
point the assessor and assistants.   The inconvenience of there
being no constable, supervisor of the highways, or overseer of the
poor, was, I suppose, the reason why a power to appoint at once
was given, and no second election.   If we add to what was said
before, that the road tax and poor tax could not be assessed until
after the county tax was finally adjusted after the appeals, we will
see strong reason for filling the office of assessor at once.   To
repeal an express enactment by implication, requires a strong and
clear inconsistency between the laws.   I see none such here.   On
a vacancy in the office of constable, supervisor or overseer of the
poor, from any cause, the Quarter Sessions must appoint, and not

[Street v. The Commonwealth.]

order a new election; and in the case before us the commissioners had the right to appoint.

Judgment reversed, and judgment for defendant below.