The judgment is affirmed.

## Brown *versus* The County Commissioners.

1. A general statute without negative words will not repeal a previous statute which is particular, though the provisions in the two be different.

2. The Act of Assembly of 10th April, 1834, creating the County Board of Philadelphia county, is constitutional and in full force; it has not been repealed by the Act of 15th April, 1834, relating to counties and townships, and the officers of each.

3. The County Commissioners of Philadelphia county have no power, without the sanction of the *County Board*, to subscribe for stock in the Sunbury and Erie Railroad Company, by virtue of the Act of 10th February, 1852, authorizing the corporate and constituted authorities of any municipal or other corporation to subscribe to the same.

THIS was a Bill in Equity, filed in the Supreme Court for the Eastern District of Pennsylvania, on the part of John A. Brown and others, citizens and taxable inhabitants of the county of Philadelphia, complaining that Adam Shetzline, William Faunce, and William S. Allen, County Commissioners of the county of Philadelphia, were about to subscribe for 20,000 shares of stock in the Sunbury and Erie Railroad Company, at $100 per share. It was further alleged, that they designed to issue bonds in the name of the county of Philadelphia to the amount of two millions of dollars, pledging the faith and credit of the county for their payment. It was alleged that the proceeding was without authority in law, and an injunction was prayed for to restrain the defendants from making the subscription, or issuing the bonds.

In the answer it was admitted that two of the Commissioners (being a majority) had agreed to subscribe for the stock, and to issue the bonds, for the amount stated in the bill.

It was averred, that by the Act of 15th April, 1834, the county of Philadelphia was a *Corporation*, with power to hold personal

D

property, and for *such other objects and purposes as may hereafter be expressly authorized by law*, and to make such contracts as may be necessary and proper for the execution of the same objects and purposes: That by the *fourth* section of the act it was provided that the corporate powers of the several counties shall be exercised by the commissioners thereof: and by a subsequent provision, two of the commissioners are authorized to form a board for the transaction of business.

It was further averred, that the Sunbury and Erie Railroad Company was established by act of 3d April, 1837, and various supplements thereto, and proceedings in virtue thereof: and that by one of the supplements, approved on the 10th February, 1852, it was enacted, section 1, That it shall be competent to the corporate or constituted authorities of any municipal or other corporation in the Commonwealth, to subscribe for shares in the capital stock of the Sunbury and Erie Railroad Company, and to borrow money to pay therefor, and to make provision for the payment of the principal and interest of the money so borrowed, &c.

It was further averred, that they had been instructed by counsel that as county commissioners they had authority to make the subscription in question.

Further, that if the subscription be made, in their opinion, it will not impair the credit of the county, but will be beneficial to the county.—It was further alleged, That petitions have been presented to them, containing about two thousand signatures of citizens of the city and county of Philadelphia, requesting them to make the subscription, and that they had received no remonstrance against it.

By the 5th section of an Act, approved on the 10th April, 1834, (*Acts*, p. 267–8), it was enacted, that, "From and after the passage of this act, the members, for the time being, of the Senate and House of Representatives from the city and county of Philadelphia, shall form *the County Board*, whereof a quorum shall consist of a majority of the whole number, who shall have free access to the books, papers, and accounts of said office, and without whose consent and approbation, in writing, it shall not be lawful for the commissioners of the said county of Philadelphia to lay any tax, or county rate or levy, or to borrow any money except as is hereinbefore authorized and provided for."

By the 1st section of the Act, the County Commissioners were authorized to borrow on the credit of the county, not exceeding $475,000, to be applied to the payment of debts *before* incurred or contracted.

By the 38th section of an act passed 16th June, 1836 (*Acts*, p. 712), it was enacted as to loans to be thereafter authorized by the County Board aforesaid, in pursuance of the provisions of the

[Brown *v.* County Commissioners.]

Act of 10th April, 1834, that it shall be the duty of the Board, when they deem it expedient, specifically to appropriate the proceeds thereof; to regulate the terms and manner in which the said loan shall be taken, &c.; and no part of the proceeds of said loan shall be paid out of the county treasury, except under such appropriations, &c. '

The case was argued by *Campbell* and *Meredith* in support of the injunction.

*William D. Baker* and *John M. Read* were for the respondents.

It was contended that, by the Act of 15th April, 1834, the county of Philadelphia was a corporation, and that the county commissioners were the corporate or constituted authorities of the corporation, within the terms of the Act of 10th February, 1852, authorizing subscriptions for shares in the stock of the Sunbury and ·Erie Railroad Company. It was stated that the County Board was created by the Act of 10th April, 1834, *passed five days before the Act of 15th April,* 1834, relating to counties and townships; but that it was not stated in that or any other subsequent Act, that the members of the legislature from the city and county were a part of the corporate authorities of the county. It was intimated that the act establishing the County Board was *unconstitutional,* as investing members of the legislature, who have only legislative authority by the Constitution, with powers foreign to their duties as legislators, and of a local and executive and administrative character. It was, however, alleged that the decision of this question was not necessary in this case, as the county commissioners were the only corporate authority competent to act in making the subscription authorized by the Act of 10th February, 1852.

It was further suggested, that the Supreme Court could not exercise a jurisdiction over municipal corporations, under the Act of 16th June, 1836, giving them a general supervisory power over corporations.

The opinion of the Court was delivered, April 11, 1853, by

BLACK, C. J.—This is a bill in equity by several citizens and taxable inhabitants of the county of Philadelphia, who complain that the defendants, commissioners of the county, have agreed to subscribe for twenty thousand shares of capital stock in the Sunbury and Erie Railroad Company, at one hundred dollars for each share, and to pay for these shares are about to make and issue bonds in the name of the county, to the amount of two millions of dollars; pledging the faith and credit of the county for their payment. The bill avers that the large debt thus to be created will seriously impair the credit of the county, and augment the taxation

[Brown *v.* County Commissioners.]

upon the property of the citizens; and that the whole proceeding, as contemplated by the commissioners, is without any warrant or authority of law.    The relief prayed for is an injunction to restrain the defendants from making the subscription or issuing the bonds referred to.

The answer admits that two of the Commissioners (being a majority) have agreed to subscribe for the stock as alleged in the bill, and that they intend to pay for it in bonds of the county, and they are well assured that they have the power by law to do so.

The facts being undisputed, the plaintiff's counsel have laid before us the bill and answer, and moved us for a preliminary injunction.    Whether we can grant it or not depends upon the construction to be given to the several statutes, which prescribe the duties and define the powers of the County Commissioners.

It is not pretended, and if it were, it could not be believed for a single moment, that the Commissioners of a county can pledge the property of their constituents for money to be invested in the stock of a railroad corporation, unless it be done in pursuance of some special statute.    The general law of the land forbids that money shall be borrowed on the faith of the county for such a purpose, or that public funds already in the treasury shall be so appropriated.

The power now claimed by the defendants, is asserted by their counsel to have been conferred on them by the first section of a supplement to the charter of the Sunbury and Erie Railroad Company, passed February 10th, 1852, which contains these words:—
"It shall be competent to the corporate and constituted authorities of any municipal or other corporation in the Commonwealth, to subscribe for shares in the capital stock of the Sunbury and Erie Railroad Company; and to borrow money to pay therefor and to make provision for the payment of the principal and interest of the money so borrowed."    It is argued that the county is "a municipal or other corporation," and that the Commissioners are "the corporate or constituted authorities," thereof, and therefore they are within the very letter of the statute.    Both the propositions from which this deduction is made are denied by the plaintiffs.    According to them the county is not a corporation, and if it were, the County Board is a part of its constituted authorities, without whose consent no such contract as the one proposed can be lawfully made.

Assuming for the present, that the county is a corporation within the meaning of the Act, we will consider whether the Commissioners have the authority to make this subscription, and to create this debt without the consent of the County Board.    That the consent and approbation of the County Board has not been obtained, is an admitted fact, and that the Commissioners design to proceed without regard to its opinion is plainly avowed.

[Brown v. County Commissioners.]

The County Board was established by an Act of the Legislature, passed April 10, 1834, and is composed of the members for the time being of the Senate and House of Representatives from the city and county. The Act declares that without their consent it shall not be lawful for the Commissioners to levy any tax or to borrow any money. By another Act passed June 16th, 1836, it was provided not only that the consent of the County Board should be required to authorize every loan, but also that it should regulate the terms and manner of taking such loan, and that no part of the proceeds should be paid out except in pursuance of specific appropriations to be made by it. These statutes are perfectly plain. No man can read them without understanding them, and all men must understand them alike. If they were not void for want of power in the legislature to pass them, and if they still stand unrepealed, the intended action of the Commissioners is as clear a violation of their duty as can well be conceived. They design upon their own authority and against the will of the County Board to issue the bonds of the county; this is in effect but negotiating a loan. They propose to use the fund thus raised in the purchase of stocks; this is appropriating the proceeds of the loan. They intend to create a debt of two millions, and this will produce an irresistible necessity for a tax. The powers of borrowing, appropriating and taxing, are therefore all assumed by the Commissioners themselves, and the right of the County Board to control them in the exercise of either, is denied and repudiated in direct opposition to the words of the statute. It is very manifest that the Commissioners are wholly wrong, unless the Acts of Assembly establishing the County Board and conferring its powers upon it, can be got out of their way.

To get rid of these Acts it is argued that they are unconstitutional, and that therefore the Commissioners were right enough in disregarding them. There is nothing in the constitution which makes a County Commissioner sacred and intangible by the legislature. The office is created by legislative authority, and all its power and privileges are derived from that source. They who made, can unmake it wholly, and *a fortiori* can limit and restrict its incidental rights. The constitutional validity of the law is further impugned on the ground that it imposes on members of the Assembly, administrative and local instead of general and legislative duties. It is a sufficient answer to this that the constitution does not forbid it, and that the offices are not in their own nature incompatible. The policy of such a regulation is not for us to discuss.

It is further argued (and here is the strain of the case) that the law establishing the County Board was repealed five days after its passage, by the same legislature which enacted it. If this be true,

[Brown *v.* County Commissioners.]

the members of the legislature from the city and county have for nineteen years been exercising an usurped control over matters with which they had no right to intermeddle, regulating taxation and appropriating many millions of money without any authority whatever. The members of the County Board, including those who passed the repealing law, seem to have been totally unconscious of it. The legislature, on seven different occasions since 1834, have treated the repealed statute as a law in full force. The people, the legal profession, the judicial tribunals, and all public officers, have conformed themselves to it. In one case at least, this Court made it the foundation of a solemn judgment. (7 *W. & Ser.* 17.) The Commissioners themselves acquiesced in and submitted to it without a complaint, down to the moment when the assent of the County Board was refused to this subscription. The somewhat startling character of this argument is made more so by the fact that the repealing law is not an obscure clause tacked to a private bill; it was not smuggled through the two houses by a trick, not thrown aside among the forgotten rubbish of the old pamphlets, and lately brought to light; not overlooked because it was unseen; but it forms an important part of what is emphatically called by counsel "the great Act," framed by a commission to revise the code, submitted to the legislature with an elaborate report, deliberately passed, printed in every digest, known and read of all men, and familiar to the minds of every one who has aught to do with the administration of justice, or with public affairs of any kind.

Nevertheless, though a general error may sometimes gain the strength of common law, it will not make a new statute nor reinstate an old one which has been repealed. We have therefore given to this argument a patient hearing, and not only a respectful but a careful consideration.

The Act which is said to repeal the one erecting the County Board, is the general "Act relating to counties and townships and county and township officers," passed April 15th, 1834, which in its third section provides, that counties and townships shall have capacity as bodies corporate for certain enumerated purposes, and by the fourth section, declares that "the corporate powers of the several counties and townships, shall be exercised by the commissioners and supervisors thereof respectively." It is argued that the words here quoted imply a repeal of the Act of April 10th, 1834.

When two statutes are so flatly repugnant that both cannot be executed, and we are obliged to choose between them, the later is always deemed a repeal of the earlier. This rule applies with equal force to a case of absolute and irreconcilable conflict between different sections or parts of the same statute. The last words

[Brown *v.* County Commissioners.]

stand, and others which cannot stand with them go to the ground. But whenever two acts can be made to stand together, it is the duty of a judge to give both of them full effect. Even where they are seemingly repugnant, they must, if possible, have such a construction that one may not be a repeal of the other, unless the later one contains negative words, or the intention to repeal is made manifest by some intelligible form of expression.

That the law does not favor repeals by implication, is a very old rule. Lord Coke says, it has ever been confined to repealing as little as possible of preceding statutes. (11 *Rep.* 63.) The principle prevails even where the statutes are penal, and where the humanity of the law would plead for another construction. (6 *Rep.* 19.) With much stronger reason it applies to statutes which give powers to different persons. If the powers can subsist together, the grant of one is not a withdrawal of the other. (15 *East* 377.) These authorities have always been followed in Pennsylvania. One act of Assembly is held to repeal another by implication only in cases of very strong repugnancy, (6 *W. & S.* 209,) or irreconcilable inconsistency. (10 *Barr* 442.)

Is there any strong repugnancy, or irreconcilable inconsistency between the two acts under consideration? Certainly not. On the contrary, there is no conflict whatever. It does not follow that the commissioners may not exercise the corporate powers of the county because they must do so in subordination to another body. Their authority is not taken away by a law which regulates their manner of using it. To assert the contrary is to say, that power is not power unless it be despotic and unlimited. The County Board is not put in the place of the commissioners to perform their functions, but is set up beside them to see that these functions are well performed by the commissioners themselves. The third section of the act of 15th April, 1834, says, the corporate powers of the county shall be exercised by the commissioners. The tenth section of the same act declares, that the commissioners shall make no contract for the erection of a public building without the approbation of two grand juries and the Court of Quarter Sessions. Now these two sections are as inconsistent with one another, as the act establishing the County Board is with either. If it should be said that the tenth section abrogates the third, the answer would be very ready, that they are not repugnant, but may stand together very well.

Besides all this, it seems to be well settled that a general statute without negative words, cannot repeal a previous statute which is particular, even though the provisions of one be different from the other. (6 *Rep.* 19.) Precisely such are the statutes before us. It is against reason to suppose that the legislature in framing a general system for the State, intended to repeal a special act which the local circumstances of one county had made necessary.

The contemporaneous construction so universally given to these

[Brown *v.* County Commissioners.]

acts, would be entitled to great weight if the question were doubtful. But other reasons make the case too clear to require the aid of this authority.

Upon the whole, we are unanimously of opinion, that the Act of Assembly creating the County Board is in full force, and totally free from the least suspicion of being repealed. It follows, that the attempt of the Commissioners to appropriate public money to the purchase of railroad stocks, and to create a public debt without the consent of the Board, was illegal.

Whether the county is or is not within the words "municipal or other corporation," is a question which needs not now to be determined, since whichever way it might be decided, our judgment in this case must be the same.

It was suggested at the bar, but not argued, that the legislature had no constitutional authority to make such a law as that of 10th February, 1852, under which the Commissioners claim the power to· subscribe for stock in a railroad company. The same reasons which caused the counsel not to press the argument of this question will prevent us from giving any opinion upon it.

It is ordered and decreed, that on bond and security being given by the plaintiffs in one thousand dollars, agreeably to the Act of Assembly, a special writ of injunction be awarded to restrain the defendants according to the prayer of the bill, until further order.