BOHLMAN VS. GREEN BAY & MINNESOTA RAILWAY COMPANY.

EMINENT DOMAIN: RAILROADS: CONDEMNATION. *(1) What "just compensation" for land includes. Charter construed. (2) Requisites of order appointing commissioners of appraisal. (3, 4) Effect of railroad law of 1872 on condemnation proceedings. (5) Right of eminent domain delegated to corporation to be strictly pursued. (6, 7) Oath of office of commissioners of appraisal. (8) Effect of railroad law of 1874.*
INJUNCTION: *(9) To restrain construction of railroad on land not duly condemned.*

1. A provision in defendant's charter authorizing it to condemn land upon payment of *the value of the land taken*, would be construed as requiring payment of the *just compensation* required by the constitution, which includes damages accruing to the residue of the owner's land from such taking; and, so construed, the charter would be upheld. *Bigelow v. Railway Co.*, 27 Wis., 478.
2. In appointing commissioners of appraisal under such a charter, the order of appointment should have given not only the language of the charter, but also, by way of direction to the commissioners, the construction put upon it by the court.
3. The general railroad law of 1872 furnishes the rules and methods for the acquisition, thereafter, of private property by railroad companies, in the exercise of the right of eminent domain; repealing all prior provisions on the subject in their charters. *Moore v. Railway Co.*, 34 Wis., 173.
4. Where commissioners of appraisal were appointed before the act of 1872, their proceedings under such appointment, taken after that act, must be governed by it, there being then no other law authorizing them to act.
5. A statutory power for the exercise of the right of eminent domain, dele-

gated to a corporation, must be strictly pursued; and the jurisdiction of the commissioners of appraisal should affirmatively appear.

6. The act of 1872 required such commissioners, before entering on the duties of their office, to take the constitutional oath prescribed for state officers: to support the constitutions of the United States and this state, and faithfully to discharge their duties to the best of their ability. Defendant's charter, under which the commissioners in this case were appointed, required of them no oath; but they took one to execute the trust reposed in them and discharge the duties imposed upon them *as enjoined in said charter*, pursuant to the provisions of the charter, to the best of their ability. *Held*, that their proceedings were *void for want of jurisdiction*.

7. What the rule would be if the record were silent as to the oath, is not here decided.

8. The act of 1874, which gives to existing railroad companies all the powers of the general railroad act, and also of their respective charters, being amendatory and not declaratory, is not applicable to this case, where the proceedings were prior to that act. But this court does not understand that act as changing the powers or duties of circuit courts, or of commissioners appointed by them, in the exercise of the right of eminent domain.

9. The owner of land taken by a railroad company without any valid proceeding for that purpose, is entitled, *ex debito justitiæ*, to an injunction restraining the company from constructing its road on the land.

APPEAL from the Circuit Court for *Outagamie* County.*

Action to restrain the defendant from constructing its road across plaintiff's land. The complaint alleged the incorporation of the defendant under a charter granted in 1866, the location of its road across his land without his consent, entry upon the land against his protest, and the taking of possession without making or offering compensation, etc.; and it prayed a perpetual injunction against the construction of the road across said land, the running of cars and locomotives thereon, etc.

The original answer denied entry without consent, or that the land taken was worth more than $100; and alleged that

---

* This case was once before this court upon appeal from a judgment of non-suit by the court below on the ground that the complaint did not state a cause of action. See *Bohlman v. Green Bay & Lake Pepin R'y Co.*, 30 Wis., 105.

beyond that sum plaintiff would sustain no damage from the construction of defendant's road. It also alleged that plaintiff had consented to the entry without any agreement for compensation, which was to be postponed until the completion of the road to New London. A supplemental answer alleged the completion and operation of the road over the land; that commissioners were appointed November 30, 1870, by the circuit court for Outagamie county, pursuant to the charter of the company, who duly made their award in writing, after notice to plaintiff and his wife, and after hearing them and viewing the land; that they determined the actual cash value of the land taken to be $146.25, and fixed the compensation to be paid at $226.25; that such award was made June 26, 1872, and the amount was tendered July 3, 1872, but was refused, and no appeal taken; and that it was deposited with the clerk for payment, and had ever since remained so deposited.

Upon the trial, plaintiff introduced evidence tending to show the damage to his land by reason of the construction of the road; that the track ran so near his house as to endanger it, and that he had no good building spot except where his house stood; that it compelled the removal of two barns, one of which was moved by defendant, and the other by plaintiff at a cost of $75; that eight fruit trees were destroyed on the line of road, valued by plaintiff at $20 each; and that defendant had taken a large amount of gravel from the land, estimated at over 7,000 cubic yards, which was worth in the pit from ten to twenty-five cents per cubic yard. A diagram of the location of the road, produced in evidence by plaintiff, showed that the line ran diagonally through the northeast corner of the land, leaving about five acres north of the railroad, and thirty-two acres south. Several witnesses were examined by plaintiff as to the entire amount of damage to the land by the location of the road, their estimates varying from $1,000 to $1,500. Plaintiff testified that he had

forbidden defendant's men coming upon the land, and never had any agreement concerning the matter, and that the road had been built and operated across the land since the suit was begun.

The president of the defendant company testified that he had a conversation with plaintiff concerning the location of the road. "I told him if we could not agree, commissioners would have to be called. He asked me when they would come. I said, as soon as we got the road through and it was convenient. He finally said, if he could have the barn moved carefully and not injured, the road might go on, and he would wait until the commissioners could come." This testimony was corroborated by that of the president's son. Defendant then introduced several witnesses, who testified that the land was worth more with the railroad than without it. It also proved a deposit by the company with the clerk of the circuit court of $226.25, the compensation awarded by the commissioners.

Defendant then introduced in evidence the condemnation proceedings. The notice of application for the appointment of commissioners stated that on the 30th of November, 1870, the company would apply to the circuit court "for the appointment of three commissioners to make, pursuant to the charter of said company, an appraisal and award of the value of any and all such lands * * as are mentioned in section eleven in said charter." The order appointing the commissioners (dated November 30, 1870) recited the location of the road, the application for appointment of commissioners and its publication, and appointed three persons named, "commissioners to make, pursuant to the charter of said company and the acts amendatory thereof, an appraisal and award of the value of any and all such lands in said counties of Brown and Outagamie, or either of them, which are the private property of any person on the line of said railroad, as are mentioned in section eleven of said charter," and directed that as such

commissioners they should "have cognizance of all cases arising on the line or route of said railroad, with all power and authority by law conferred, or intended to be conferred, upon such commissioners."

The form of oath administered to the commissioners, June 13, 1872, recited their appointment pursuant to ch. 540, P. & L. Laws of 1866 (defendant's charter), and declared that "having been duly sworn, [they] severally make oath, each for himself, that each of them will, in all respects, to the best of his ability, execute the trust reposed in him, and discharge the duty imposed upon him as in said chapter 540 enjoined, pursuant to the provisions of said chapter in the matter aforesaid."

The report of the commissioners to the court, dated June 26, 1872, recited their appointment pursuant to said ch. 540, and the taking of the oath; that they had given notice June 20 and 21, 1872, to plaintiff and his wife, and had heard them and examined the land; that they appraised and awarded the "full and actual cash value of said lands and property at the time of the entering upon, taking and appropriation thereof by said company," at $146.25; and that they designated the sum to be paid and the compensation to be made by the company, in accordance with the provisions of said ch. 540, at the sum of $226.25.

The court held, as conclusion of law, that the proceedings and award of the commissioners were valid, and conclusive upon the plaintiff, and that plaintiff was entitled to receive from defendant all his costs, less defendant's costs incurred in putting in the supplemental answer, so far as related to the proceedings and award of the commissioners. Judgment for plaintiff for costs in accordance with the finding; from which judgment plaintiff appealed.

Briefs were filed by *Geo. H. Myers*, for the appellant, and *Norris & Chynoweth*, for the respondents; and the cause was argued orally by *Mr. Myers* for the appellant, and *T. B. Chynoweth* for the respondents.

For the appellant, the argument was substantially as follows: Defendant's charter only requires the commissioners to appraise, and the company to pay, the value of the land taken; and that appraisal is to be without oath by the commissioners. If, then, no other law required them to take an oath, that taken was extra-judicial and void. *Lumsden v. Milwaukee*, 8 Wis., 485. But before the commissioners acted in this case, ch. 119, Laws of 1872, was published. Sec. 16 of that act requires the commissioners to take the oath prescribed by sec. 28, art. IV of the constitution, viz., to support the constitutions of the United States and this state, and faithfully to discharge the duties of their office to the best of their ability. Said sec. 16 also requires the commissioners, in making their award, to appraise as well the damages to plaintiff as the value of his land. The award shows upon its face that it was made in compliance with the charter alone. The commissioners having violated the constitution and laws of the state, their award is void. *Robbins v. M. & H. R. R. Co.*, 6 Wis., 636; *Powers v. Bears*, 12 id., 214; *Bigelow v. W. W. Railway Co.*, 27 id., 478; *Bohlman v. R. R. Co.*, 30 id., 105; *Snyder v. R. R. Co.*, 25 id., 60; *Moore v. Superior & St. Croix R. R. Co.*, 34 id., 174. The powers of the commissioners being merely statutory, and their jurisdiction special and limited, their proceedings, if not strictly in pursuance of the constitution and statute, are of no authority. *Benjamin v. Benjamin*, 5 N. Y., 383; *Blodgett v. Hitt*, 29 Wis., 169; *Hays v. Lewis*, 21 id., 663; *May v. M. & M. R. R. Co.*, 3 id., 219; 3 Chand., 75; *Kane v. Rock River Canal Co.*, 15 Wis., 179.

For the respondent, the following among other points were urged: 1. The provisions of defendant's charter in relation to the award of compensation are valid. *Bigelow v. West Wis. Railway Co.*, 27 Wis., 485. 2. The award, unappealed from, is conclusive. It has the same effect by way of estoppel as the verdict of a jury and judgment thereon. *Stacey v. Vt. Cent. R. R. Co.*, 27 Vt., 43; *Johnson v. M. & St. P. Railway Co.*,

19 Wis., 137; *Brazill v. Isham*, 12 N. Y., 15; *Pease v. Whitten*, 31 Me., 117; *Backus v. Fobes*, 20 N. Y., 204, 209; *Sabin v. R. R. Company*, 25 Vt., 370; *Jones v. Perkins*, 54 Me., 393; *Lloyd v. Barr*, 11 Pa. St., 41; *Bancroft v. Grover*, 23 Wis., 463; *Slocum v. Damon*, 1 Pin., 520; *G. & C. U. R. R. Co. v. Pound*, 22 Ill., 399; *Perkins v. Giles*, 50 N. Y., 231; *Tyson v. Wells*, 2 Cal., 131.  3. The award was not void because it conformed to the charter and not to ch. 119, Laws of 1872. The case of *Moore v. Superior & St. Croix River R. R. Co.*, 34 Wis., 173, was one in which the commissioners were appointed after the law of 1872 took effect. The provisions of sec. 33, ch. 119, R. S. (Tay. Stats., 1346, § 45), as to the effect of the repeal of a statute upon pending actions founded on the statute, afford conclusive support to this award. *Peoria & R. I. Railway Co. v. Birkett*, 62 Ill., 332. Again, the law of 1872 cannot affect this award, because plaintiff's land had long before been used and occupied by the company, and his claim for damages was complete long before that law. Neither the company nor the plaintiff could constitutionally be required, by retroactive legislation, either to submit their claims to the arbitrament of any other tribunal than that already provided for and established, or to proceed in any other manner than that prescribed at the time the damage was done and the tribunal established. *In re Peter Townsend*, 39 N. Y., 179. The law of 1872 should not be construed as having any retroactive force. Sedgw. on Stat. & Con. Law, 173; Potter's Dwarris, 163–166; *Seamans v. Carter*, 15 Wis., 548; *Goodrich v. Milwaukee*, 24 id., 438. 4. Defendant's charter did not require its commissioners, at the time of their appointment in 1870, to take, as part of their qualification, any such oath as that prescribed by the act of 1872. The necessity for such an oath was not created until nearly two years afterward, and then not by amendment of the charter, but by a new and independent statute. The commissioners cannot be required to take the oath prescribed

by sec. 28, art. IV of the constitution. They are in no sense legislative or executive officers. Nor are they judicial officers. Art. VII of the constitution enumerates the only judicial officers known or intended to be subject to the oath mentioned in sec. 28, and no reference is there made to railway commissioners. Again, sec. 28 empowers the legislature to exempt " inferior officers " from taking such oath. The various railway charters granted by this state which do not require such commissioners to take that oath, impliedly exempt them from so doing; or they show that the legislatures of this state have not considered them as judicial officers. See *People v. Supervisors*, 17 N. Y., 241; *People v. Highway Commissioners*, 15 Mich., 351. From the course of legislation and from the absence of any decision by this court on the subject, it is to be inferred that the general understanding has been that these commissioners are not judicial officers. *Scanlan v. Childs*, 33 Wis., 663. And the facts that no such objection has hitherto been taken, and that if now sustained it would be most disastrous to property interests, are conclusive against it. *Webb v. R. R. Co.*, 49 N. Y., 420; *Philips v. Alb any*, 28 Wis., 357.

RYAN, C. J. This case turns upon the validity of the proceedings and award of the commissioners set up in the supplemental answer of the respondent.

The language of the respondent's charter, ch. 540 of 1866, secs. 10, 11, is similar to that of the West Wisconsin Railroad Company, considered in *Bigelow v. Railway Co.*, 27 Wis., 478. In that case, the charter was upheld on the ground that the provision for the payment of *the value of the land taken* was equivalent to the *just compensation* of the constitution. That case, therefore, controls the validity and construction of the charter of the respondent in this case. But though the court is able by construction to sustain charters using such peculiar and obscure language, *ut res magis valeat quam pereat*, it by no means follows that the circuit court was right

in using the same language in the appointment of commissioners of appraisal. It certainly would have been safer and better if the order of appointment had given, not only the language of the charter, but also, by way of direction to the commissioners, the construction put upon it by the court; so that the commissioners might have before them a full expression of the rule of appraisal, and not be left to discover by construction the precise conditions of their duty in that behalf. It is impossible to read this record without being strongly impressed with apprehension that the commissioners not unnaturally mistook the full measure of their duty; and that they confined themselves very much to the literal value of the land taken by the respondent, without properly considering the damages accruing to the residue of the appellant's land. The manner in which the order of appointment literally followed the charter, and was apparently followed in turn by the commissioners, tends to make the legislature in passing such a charter, and this court in giving it a construction to sustain it, parties to a gross wrong to those whose lands may have been taken and appraised under it. The order of appointment, in this regard, is not unlike a charge of the court to a jury on the rule of damages; which should be not only technically correct, but clear and explicit to the comprehension of laymen. *Hutchinson v. Railway Co.*, 37 Wis., 582, and cases there cited. We could not well forbear saying so much on a matter of such grave and general moment.

This court held in *Moore v. Railway Co.*, 34 Wis., 173, that the general railroad act of 1872 furnishes the rules and methods for the acquisition, thereafter, of private property by railroad companies, in the exercise of the right of eminent domain; repealing all prior provisions on the subject in their several charters. We entertain no doubt of the correctness of that case, following a rule of constructive repeal well settled in this court. The order appointing commissioners in this case was made previous to the statute of 1872; but the pro-

ceedings of the commissioners under it appear to have been taken after the passage of the statute, and must be governed by it. The land of the appellant could not of course be taken from him, *in invitum;* under the repealed provisions of the respondent's charter. The taking can be justified only under the provisions of law then existing to authorize the respondent's exercise of the right of eminent domain; that is, the statute of 1872.

We cannot regard this as giving a retroactive effect to that statute. We do not hold that it operates to impair any proceeding previously taken under the charter. We therefore do not apply it to the order of the circuit court appointing commissioners. But we do apply it to the subsequent action of the commissioners, because, outside of it, they had no authority of law to act at all. Neither can we perceive any application of sec. 33, ch. 119, R. S., to the question, for reasons sufficiently apparent in *Dillon v. Linder,* 36 Wis., 344. And indeed, aside from the principle of that case, it would be strange if the legislature could be foreclosed, by a previous general statute, from changing at will the details of an incomplete statutory proceeding. This is precisely what the statute of 1872 does here.

The charter of the respondent appears to have required of the commissioners no oath of office. Sec. 16 of the general railroad act of 1872 requires the commissioners, before entering on the discharge of their duties, to take the constitutional oath prescribed for state officers: to support the constitution of the United States and the constitution of the state, and faithfully to discharge their duties to the best of their ability. The commissioners in this case took and filed with their report an oath of office to execute the trust reposed in them, and discharge the duties imposed upon them, as enjoined in the charter of the respondent, pursuant to the provisions of the charter, to the best of their ability.

Of course here was a total failure of the oath prescribed by

law.  This was probably a blunder; if so, a pregnant blunder. It apparently closed the eyes of the commissioners to the rule of just compensation required by the constitution, and to the construction of that rule in the statute of 1872: the value of the land taken, and the damages sustained by the owner by reason of the taking.  There is a strong presumption that the commissioners considered themselves to be in the execution of the repealed provision of the charter only, without much reference to the constitution and without any to the existing provision of the statute of 1872.  And their regard to the obscure and indefinite language of the charter, and disregard of the clear and specific language of the act of 1872, were a failure of duty, not in form merely, but in substance, as this record sufficiently discloses.  Had the commissioners been referred to the constitution, they must have noticed that the value of the land taken must include the damages arising from the taking, in order to fill the measure of just compensation. And had they been referred to the statute of 1872, under which alone they then had authority to act, they would have found a precise definition of the just compensation of the constitution, as construed by this court.  *Railroad Co. v. Eble*, 3 Pin., 334; *Robbins v. Railroad Co.*, 6 Wis., 636.  If the commissioners had taken the oath required by the statute of 1872, it appears quite impossible that they could have mistaken the true rule of appraisal.  Taking an oath to perform their duties under the general language of the charter only, it was quite easy to fall into the mistake into which it is greatly to be feared they did fall.

In the statute of 1872, the legislature was at the pains, *ex industriâ*, of specifically stating the rule of appraisement, leaving no room for construction or mistake.  And it was a fatal error of the commissioners to mistake the statute under which they were acting.  As it is, the oath which they took was not one authorized by law.  It was an oath to perform their duties according to the terms of a statute which were

repealed because they were vague and indefinite. It was an oath which tended to mislead them, and presumably did mislead them, in the performance of their duties. It was probably worse than taking no oath at all. It was certainly as bad.

The commissioners could proceed to the appraisal, under the authority of the statute of 1872 only. And that statute withheld all authority from them, until they should have taken the oath which it prescribes. Although appointed by the court to be commissioners, they could take the authority of commissioners only by taking the required oath. The oath was therefore jurisdictional. Failure to take the oath required by the statute left the commissioners without authority to proceed; and their whole proceeding is therefore absolutely void.

The enforcement of the right of eminent domain is a necessary but harsh process, in derogation of private right. And a statutory process for its exercise, delegated to a corporation, must be strictly followed. Sedgwick's Stat. & Const. Law, 313. The jurisdiction of the commissioners to proceed should affirmatively appear, as in other statutory proceedings in derogation of the common law. *Fladland v. Delaplaine*, 19 Wis., 459, and cases cited in Vilas and Bryant's notes; *Foster v. Hammond*, 37 Wis., 185.

It was contended by the respondent's counsel, with much ingenuity, that the oath required is only a qualification of the commissioners, and should be presumed with other qualifications, such as age, residence, etc. It is unnecessary to decide here what the rule might be in such a case, when the record is silent as to the oath. But here the record discloses that the commissioners did not take the required oath, by disclosing what oath they did take. As already remarked, the failure of the oath was a failure of jurisdiction of the commissioners. And where failure of jurisdiction affirmatively appears in a record, it is fatal even to the judgment of a court of general jurisdiction. *Rape v. Heaton*, 9 Wis., 328; *Falkner v. Guild*,

10 id., 563; *Pollard v. Wegener*, 13 id., 569; *Blodgett v. Hitt*, 29 id., 169. Some reference was made on the argument to ch. 292 of 1874, amending the statute of 1872 by giving to existing railroad companies all the powers of the general railroad act, and also of their respective charters. The act of 1874 is not declaratory but amendatory, and could not aid the difficulty here. But we think it right to say that we do not understand the amendment of 1874 as changing the powers or duties of the circuit courts or of commissioners appointed by them, in the exercise of the right of eminent domain. This case sufficiently shows the propriety of a general statute governing the exercise of the right by all railroad companies; and the wisdom of the careful and precise provisions of the statute of 1872. And we cannot believe that the legislature intended to relegate the proceeding to the incongruous and sometimes uncertain language of particular charters, repealed by the safer provisions of the statute of 1872.

It is a very easy thing for the respondent to acquire the right of way over the appellant's land, making just compensation to him according to the constitution and the statute of 1872. In the mean time, let the consequences be what they may, the appellant is entitled, *ex debito justitiæ*, to the judgment which he seeks.

*By the Court.* — The judgment of the court below is reversed, and the cause remanded, with instructions to the court below to render judgment for the appellant according to the prayer of the complaint.

On a motion by the respondent for a rehearing, it was urged in the brief of *Norris & Chynoweth*, that sec. 33, ch. 119, R. S.,* is applicable to a proceeding for the condemnation of land,

---

* The section cited reads as follows: "No action at law or criminal prosecution now pending, or which shall hereafter be commenced, founded upon any statute of this state, shall be defeated by a repeal of such statute; but any

because, from the time of the application to the court for the appointment of commissioners until judgment obtained, there is a judicial proceeding, an action, pending. *Warren v. R. R. Co.*, 18 Minn., 384; *In re Cooper*, 22 N. Y., 67; *Colby v. Dennis*, 36 Me., 9; *Peoria & R. I. Railway Co. v. Birkett*, 62 Ill., 332; *Kennett's Petition*, 4 Foster, 139; and especially *Kohl v. United States*, 91 U. S. (1 Otto), 367, and authorities there cited. This being so, counsel further contended that the proceedings and award of the commissioners in this case, being in accordance with the provisions of defendant's charter, were valid, even if those provisions were repealed by the act of 1872. In support of this view, they argued that the charter of the company merely provided a *form of proceeding, or action*, by which the right to condemn land for public use was enforced, but that the *right* itself existed independently of any statute. *West River Bridge Co. v. Dix*, 6 How. (U. S.), 507; Vattel, b. 1, ch. 20, pl. 244; Code Nap., b. 2, tit. 2, 545; 1 Black. Comm., 139 ; Cooley's Bl., 137, 139. It is the right of the state which is enforced in all such proceedings; the state takes the land through the agency of the corporation. *Pratt v. Brown*, 3 Wis., 612; *Attorney Gen. v. Railway Cos.*, 35 Wis., 580; *Beekman v. R. R. Co.*, 3 Paige, 44; *West River Bridge Co. v. Dix, supra; Weir v. R. R. Co.*, 18 Minn., 155. 2. Counsel also asked the court to reëxamine *Moore v. S. & S. Railway Co.*, 34 Wis., 173, in connection with ch. 119, Laws of 1872, and argued at length that the provisions of secs. 13 and 55 of that act relate only to railroad companies organized or reorganized under the act itself. *Comm. v. Council of Montrose Borough*, 52 Pa. St., 391. They further argued that the act of 1872 did not have the effect to repeal by implication the provisions of defendant's

---

such action or prosecution shall proceed to issue, trial, and final judgment, in the same manner and to the same purpose and effect as though the statute upon which the same is or shall be founded was continued in full force, virtue and effect to the time of such trial, issue and final judgment."

charter (and other like charters), because there is no negative language in the later statute in respect to the charter, and the two statutes may well stand together. *Attorney Gen. v. Brown,* 1 Wis., 513; *Dodge v. Gridly,* 10 Ohio, 173; *Attorney Gen. v. Railway Cos.,* 35 Wis., 554. Where a new remedy or mode of proceeding is authorized, without negative words or express repeal of a former one relating to the same matter, it is to be regarded as merely cumulative. *Crittenden v. Wilson,* 5 Cow., 165; 6 Ohio St., 307, 316; 11 id., 16; 11 Ohio, 134; *Goodrich v. Milwaukee,* 24 Wis., 422, 438. Again, special legislation controls general, upon the subject matter of the special act. Potter's Dwar., 272–3; *Western Bank, etc., v. Tallman,* 17 Wis., 532; *Walworth Co. v. Whitewater,* id., 193; *Cramer v. Stone,* 33 id., 212; *Janesville v. Markoe,* 18 id., 350; *Johnston v. Hamburger,* 13 id., 176–7; *Mead v. Bagnall,* 15 id., 156; *Ellis v. Batts,* 26 Tex., 703; *Brown v. Comm'rs,* 21 Pa. St., 37. Of course a special act is repealable by a general act, but the intent to repeal ought to appear clearly, especially in such a case. ´The act of 1872 does not in terms repeal defendant's charter. It does not even contain the usual final section repealing acts or parts of acts conflicting with it, differing in this respect strikingly from ch. 146 (sec. 14), and other general laws of the same session, which assumed to revise the subject matter of various preëxisting laws. Sec. 13 declares that "any railroad company * * shall have the right to acquire title * * in the manner prescribed by this act;" and sec. 55 declares that all existing railway corporations shall have the powers and privileges contained in the act; but neither section contains any negative or exclusive words. *Moore v. Railway Co.* seems to interpolate such words, contrary to the established principles of construction. Potter's Dwar., 192; *King v. Burrell,* 40 E. C. L., 96; *Lamond v. Eiffe,* 3 Q. B., 910; *Street v. Commonwealth,* 6 W. & S., 209; *Comm. v. Easton Bank,* 10 Barr, 442; *Brown v. Comm'rs,* 21 Pa. St., 37; *Meek v. Pierce,* 19 Wis., 300, 304;

6 Ohio, 503; 10 id., 173, 476; 10 Ohio St., 15, 331, 362. Moreover, sec. 56 expressly repeals certain laws, without any general repealing clause added. This shows that the legislature did not contemplate a general repeal of all other laws on the subject. Under such circumstances, the specification of certain laws as repealed, is equivalent to a declaration that other laws shall continue in force. *Lee v. Evans*, 8 Cal., 431; *Bird v. Dennison*, 7 id., 307; *Perkins v. Thornburgh*, 10 id., 191; *Attorney Gen. v. McDonald*, 3 Wis., 807. Moreover, sec. 58 declares that "whenever any commissioners appointed *under any law of this state* for the purpose of appraising, etc., shall be, *by the law under which they have been appointed*, limited to a time less than ninety days in which to *perform their duties*," they shall have ninety days from the time of their appointment "in which to discharge the duties imposed upon them, *any law of this state heretofore enacted to the contrary notwithstanding*." This is an express recognition of past appointments, of the power to make future appointments, and of the continued force of laws theretofore enacted in this state in relation to the making of such appointments, the modes of proceeding prescribed in such laws, and the powers and jurisdiction of the commissioners under and in accordance with them. *State v. Miller*, 23 Wis., 634. 2. If the court should not accept these views, counsel asked that its judgment should at least be modified by providing that no injunction should issue if the defendant, within a reasonable time, to be designated by the court, should institute proceedings to condemn the plaintiff's land, and promptly prosecute them as the court should direct. 17 Minn., 228; 1 Eng. Railway Cas., 684; 22 Wis., 588; 59 Pa. St., 433.

LYON, J. A very able argument against the correctness of the decision in the case of *Moore v. The Superior & St. Croix Railroad Co.*, 34 Wis., 173, has been submitted by the learned counsel for the defendant in support of the motion for a re-

hearing. Because that side of the question was not there argued, we have, on this motion, carefully reviewed that decision, and are firmly convinced that it is correct in principle and should not be disturbed. The grounds upon which that case was decided are sufficiently stated in former opinions, and no further statement or discussion thereof is required here.

Our adherence to that decision may result in some inconvenience to those railway companies which took a different view of the scope and effect of the act of 1872, and attempted to condemn lands under their respective charters after the passage of the act; but the danger of such inconveniences does not authorize us to construe the act differently from what we believe the legislature intended, and in derogation of the rights of the citizen whose property is liable to be taken from him without his consent.

For reasons already sufficiently stated by the chief justice in the former opinion in this case, the judgment of the circuit court is not supported or aided by *Dillon v. Linder*, 36 Wis., 344, or the statute there under consideration.

The motion for a rehearing must be denied, with $25 costs.

In the usual course of practice, the defendant will probably have sufficient time before the injunction prayed for will be likely to issue, in which to procure a valid condemnation of the plaintiff's land. In any event, no good reason is perceived why the circuit court may not, after the cause is remitted, withhold the injunction a reasonable time to enable the defendant to procure such condemnation. It is not necessary or proper that this court should now make any order or give any direction in that behalf.