# Commonwealth *versus* Erie Railway Co.
# Same *versus* Same.

Section 6 of the Act of March 26, 1846 (P. L. 179), providing that the stock of the New York and Erie Railroad Co. shall be subject to taxation to an amount equal to the cost of constructing that part of the road situate in Pennsylvania, is not repealed by the provisions of the General Revenue Act of April 24, 1874 (P. L. 68), providing that every railroad company doing business in this Commonwealth, shall be subject to a certain tax upon its capital stock. The former act fixes the amount of capital stock to be assessed ; the latter act fixes the rate of taxation.

May 20th 1881. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ.

ERROR to the Court of Common Pleas of *Dauphin county:* Two cases. Of May term 1881, Nos. 170, 171.

These were appeals by the Erie Railway Company, a corporation of the state of New York, from the settlements of the auditor-general and state treasurer against the said company, for a tax on capital stock for the years ending the first Monday of November 1876, and the first Monday of November 1877. There was no dispute as to the facts, and by agreement, the cases were tried by the court without the intervention of a jury.

The material facts were as follows: The Erie Railway Company passes through the counties of Susquehanna and Pike, in the state of Pennsylvania. It obtained the right of way through Susquehanna county by the Act of February 16th 1841 (Pamph. L. 28). There is no mention made of taxation in this statute. The right of way through the county of Pike was secured to it by the Act of March 26th 1846 (Pamph. L. 179). Section 5 of this act makes it the duty of the officers of said company, as soon as the railroad shall have been completed through

[Commonwealth *v.* Erie Railway Co.]

Susquehanna and Pike counties, to file with the auditor-general a sworn statement of the cost of that portion of the said road within the state; and after the completion of the railroad to its western connections, to pay into the state treasury annually, in the month of January, $10,000. In pursuance of the above direction, the cost of that part of the Erie Railroad in Pennsylvania, was appraised and reported at the sum of $2,170,501.89.

Section 6 of the said Act of 1846 is as follows: "That the stock of said company, to an amount equal to the cost of the construction of that part of their road situated in Pennsylvania, shall be subject to taxation by this Commonwealth in the same manner, at the same rate as other similar property is or may be subject; and it shall be the duty of the said company to cause their treasurer to pay into the treasury of this state any tax to which said proportion of stock is liable, and the said company shall annually, in the month of January, make a statement to the legislature, under oath or affirmation of the president thereof, of its affairs, and the business done upon said road during the previous year; said statement to contain a full and accurate account of the number of passengers, amount and weight of produce, merchandise, timber, coal, and mineral transported on said road east of Dunkirk and west of Piermont."

The General Revenue Act of April 24th 1874, section 4 (Pamph. L. 68), enacted that every railroad company, incorporated under any law of this Commonwealth, or incorporated in any other state and doing business in this Commonwealth, shall pay a tax into the state treasury annually at the rate of nine-tenths of one mill upon its capital stock for each one per cent. of dividend declared, and in case of no dividend being declared, then six mills upon a true valuation of the capital stock.

The accounting officers were of the opinion that the act of 1874 repealed the method of taxing the capital stock of this company, mentioned in the Act of 1846, and rendered it liable to tax in the same manner as the stock of other railroad companies is taxed, according to the ratio sustained by the portion of the road in this state to its entire length. They therefore, in order to make a settlement of the tax, procured from the company a report and appraisement, by which it appeared that the company declared no dividends during the years ending November 1876 and November 1877; that the actual value of the capital stock was appraised for the year ending November 1876, at $13,980,801, and for the year ending the first Monday of November 1877, at $8,465,578.

The accounting officers therefore settled the tax for the year 1876 on the proportion of the capital stock represented by $\frac{42147}{400029}$

[Commonwealth *v.* Erie Railway Co.]

of road, being the proportion in Pennsylvania, with interest and penalty amounting to $9,745.02.

A similar settlement was made for the year ending November 1877, upon the appraised value of the capital stock for that year, viz.: $8,465,578, except that for the portion of the year after March 20th 1877, the tax was at the rate of three mills, as fixed by the act of March 20th 1877 (Pamph. L. 6). The tax for the latter year, with interest on the said proportion of the road in Pennsylvania, was $3,333.70.

The company appealed from these settlements on the ground *inter alia* that the tax should have been levied according to the provisions of sections 5 and 6 of said Act of March 26th 1846, which constituted a contract between the state of Pennsylvania and said railway company, and because the settlement of tax under the said acts of 1874 and 1877 impairs the obligation of said contract, and said last mentioned acts, so far as they may apply to the Erie Railway Company, are unconstitutional and void.

The court sustained the exceptions, and entered judgment in favor of the Erie Railway Company, PEARSON, P. J., filing the following opinion:

" The defendant company showed the grant of a franchise from Pennsylvania for this company to lay a track of its road through two counties of this state for about forty-two miles, for which it was to pay $10,000 per annum. It was by a later statute required to have the cost of the road in Pennsylvania appraised and a report made of the cost thereof, in this State, to the auditor-general's office, which was done, and the cost thereof was appraised at $2,170,501.89. We find these to be the undis-. puted facts in the case.

" The question presented is, how is the tax to be assessed ? The Commonwealth claims that it should be done under the 4th section of the Act of the 24th of April 1874, by apportioning it to the number of miles within this state. The defendant, that it must be taxed under the 5th and 6th sections of the Act of March 26th 1846, according to which it was appraised. If computed by that data, then a question arises as to whether it should be taken at its face, or by estimating the value of the. stock ? The 5th section directs the appraisement; the 6th ' that the amount equal to the cost of construction in this state shall be subject to taxation by the Commonwealth in the same manner, at the same rate, as other similar property is or may be subject.' How is the stock taxed? The answer is obvious. If it will make a dividend of six per cent. or over, at a rate fixed by the statutes from time to time; if under that rate then at a valuation, generally to be made under oath by the company officers.

2 OUTERBRIDGE—9

[Commonwealth *v.* Erie Railway Co.]

The expense of construction, or cost of that part of the road in Pennsylvania is valued, and thenceforth well known, and the computation by the mile is seldom resorted to when this better and more certain method exists. In fact, it has been held by several decisions of the Supreme Court, that when a valuation or account of the expense of constructing a portion of the road has been ordered by statute, made and returned to the auditor-general's office, there could be no change in the valuation. This was first decided by myself in 1849 in the case of 'The Delaware and Hudson Canal Co. *v.* The Commonwealth,' and was affirmed in the Supreme Court the same summer (not 1859, as stated in 7 Wright 230), but brought up a second time in 1862, between the same parties, when I had decided that for new and extensive improvements, additional taxes might be laid on the new part, for which the judgment was reversed; the judge delivering the opinion declaring that there could be no increase of this valuation, but this state, being the owner, could only take its share in dividends. This, of course, was in lieu of taxes. I am inclined to doubt the soundness of that part of the opinion which makes the state a partner in this road, but believe the road within this state must be taxed by the proportion fixed against other roads in the state by its valuation, and not by its length. The first of the cases cited was best considered, but has never been reported. I do not deny the power of the legislature to impose additional tax on this company when the wants of the state require it, but it must be imposed by express direction. There is no presumption that the legislature intended to depart from a valuation, and adopt a new system, unless expressly required. There is no doubt but that the 4th section of the Act of 1874 most carefully, and in clear language, imposed taxes on this, as on all other railroads within this Commonwealth, but in what way was it to be imposed? If to be computed by the mile, it would be much greater than if on the value of the stock as returned. There is nothing in the words of the Act of 1874 which should cause a change in the method of assessing the taxes in this case, which has been pursued invariably from 1846.

"On examination, it is found that on the principles laid down in the foregoing opinion, and the production of the receipt of the state treasurer, there is nothing due to the Commonwealth. We, therefore, find in favor of the defendant."

Exceptions filed to the above decision were overruled by the court; whereupon the Commonwealth took this writ of error, and filed the following specifications of error:

1. The court erred in deciding as follows: "There is nothing in the words of the Act of 1874, which should cause a

[Commonwealth *v.* Erie Railway Co.]

change in the method of assessing the taxes in this case, which had been pursued invariably from 1846."

2. The court erred in entering judgment against the Commonwealth and in favor of the Erie Railway Company.

*Lyman D. Gilbert,* deputy attorney-general, and *Henry W. Palmer,* attorney-general, for the plaintiff in error.—It is a general principle that no surrender of the general power of taxation by any legislative act can be implied. The Erie Railway Company first obtained a right to pass through a portion of Pennsylvania in 1841, under an act which was silent on the subject of taxation. The Act of 1846, extending this right to another county, provided a special mode of taxation, but it contains no contract limiting the taxing powers of this Commonwealth, and we contend that its provisions for taxation are supplied and repealed by the Acts of 1874 and 1877. This has virtually been already decided by this court in the Erie Railway Co. *v.* Commonwealth, 16 P. F. Smith 84, and Erie Railway Co. *v.* Pennsylvania, 21 Wallace 492, in both of which cases a new order of tax was sustained against this company, which could not have been done if the Act of 1846 had contained any contract restricting taxation. A corporation, chartered under an act which prescribes the payment of a certain tax in a certain mode, is subject to a subsequent general law, which increases the rate of taxation: Commonwealth *v.* Easton Bank, 10 Barr 442. A general tax law repeals an earlier special tax law unless it is protected, as the Act of 1846 is not, by a legislative contract: Iron City Bank *v.* Pittsburg, 1 Wright 340; Commonwealth *v.* Fayette Co. R. R. Co., 5 P. F. Smith 452; Union Improvement Co. *v.* Commonwealth, 19 Id. 140. Mileage ratio is a proper admeasurement of the tax: Delaware Railroad Tax, 18 Wallace 208; Erie Railway Co. *v.* Pennsylvania, 21 Wallace 492; State Railroad Tax Cases, 2 Otto 611. Our position is in harmony with the above decisions and with sections 1 and 2 of article IX. of the Constitution, relating to uniformity of taxation.

*J. W. Simonton,* for the defendant in error.—Our position is that the special Act of 1846 is not repealed by the several subsequent taxing acts, not so much because they would impair our contract with the state, as because they do not relate to the same subject. The former deals with the *rate* of taxation and the *manner* of its collection, the latter fix a *proportion* of a larger quantity, which shall be subject to the tax, it being admitted that the whole is not. There is no repugnancy between them, and therefore the former is not repealed by the latter. So far as

the Acts of 1874 and 1877 change the rate of taxation, they bind the defendant as as well as all other companies, but as they enact nothing about the proportion of the taxable subject, the proportion, as fixed by the Act of 1846, remains in force.   The legislature might, no doubt, change the proportion of capital stock subject to tax, or adopt a mileage ratio as the basis of a proportion, but it has not done so.   The cases cited on the other side either do not touch the question of ratio and proportion, or were decided under acts which expressly prescribe the mileage ratio, which the Acts of 1874 and 1877 do not.   In this case the mileage ratio basis would be unjust, as the portion of defendant's road in Pennsylvania runs through a comparatively sparsely settled district, the cost per mile being less than that of many other parts of the line, and all the expensive improvements and terminal works are outside of the state.

Mr. Justice TRUNKEY delivered the opinion of the court, June 2d 1881.

Section 6 of the Act of March 26th 1846, P. L. 179, relating to the New York and Erie Railroad Company, provides, "That the stock of said company, to an amount equal to the costs of the construction of that part of their road situated in Pennsylvania, shall be subject to taxation by this Commonwealth in the same manner, at the same rate, as other similar property is or may be subject."

Section 4 of the Act of April 24th 1874, P. L. 68, declares that every railroad company "in any way engaged in the transportation of freight or passengers, shall be subject to and pay a tax into the treasury of the Commonwealth, annually, at the rate of nine-tenths of one mill upon its capital stock for each one per cent. of dividend made or declared by such company, and in case of no dividend being made or declared by such company, upon either its common or preferred stock, then six mills upon a true valuation of the capital stock of the same, upon which no dividend has been made or declared, made in accordance with the provisions of the 3d section of this act."

The only question now to consider is, whether the 6th section of the Act of 1846 is repealed by the Act of 1874.   It is conceded that the Act of 1874 does not impose a tax upon the entire stock of the Erie Railway Company; only upon a fair proportion with reference to so much of the road as is located in Pennsylvania.   It is silent as to the mode of ascertaining this proportion.   But the Act of 1846, special as to this company, directs that the stock to an amount equal to the costs of construction of that part of the road situated in Pennsylvania, shall be subject to taxation in the same manner and at the same

[Smith v. Walker.]

rate as other similar property. By the later statute a rate is fixed, if there be a dividend; if no dividend, then a rate upon a true valuation of the capital stock. The prior statute fixes the amount of that stock. One fixes the rate for all railroad companies, the other determines the assessment of the stock of this company. The alleged inconsistency is not clear. There is no difficulty in the way of both having effect. One does not repeal the other, unless there be a clear and strong inconsistency between them : Street *v.* Commonwealth, 6 W. & S. 209; Kilgore *v.* Commonwealth, 9 W. N. C. 184. Had it been the intention to place an undefined and arbitrary discretion in the public officers, to fix the proportion of the capital stock, the repeal of the 6th section of the Act of 1846 would be plainly expressed.

We think the learned judge of the Common Pleas was right in his conclusion that the Act of 1846 settles the method of ascertaining the amount of capital stock which shall be assessed, and that the Act of 1874 fixes the rate of taxation.

Judgment affirmed.