## Patterson et al., Appellants, *v.* Pennsylvania Liquor Control Board.

Argued October 26, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Thomas Raeburn White,* with him *John M. Snyder,* for appellants.

*Patrick E. O'Leary,* Special Deputy Attorney General, with him *Charles J. Margiotti,* Attorney General, for appellee.

OPINION BY CUNNINGHAM, J., January 29, 1937:

C. A. Patterson, acting for himself and some fifty additional taxpayers of the Borough of Williamsburg, Blair County, has appealed from an order of the court below dismissing their protest against the establishing of a "Pennsylvania Liquor Store" in the Friedman Building on Second Street in that municipality. In it they averred the proposed location is undesirable because of its proximity to churches, a school, and private residences. At the same time, a rule, theretofore granted upon the Pennsylvania Liquor Control Board

requiring it to show cause why a hearing should not be had, was discharged.

The concrete and pivotal question here involved is whether, under existing legislation, notice of the selection of the location should have been given by publication in the Blair County Legal Journal as well as in the Altoona Mirror and the Tyrone Times. The material facts in the case are not in dispute. Appellants are taxpayers residing within a quarter of a mile of the proposed location. The Pennsylvania Liquor Control Board, pursuant to its power and duty "to determine the municipalities within which Pennsylvania Liquor Stores shall be established, and the locations of the stores within such municipalities," selected the location here in question and gave notice thereof by public advertisements in the Altoona Mirror on September 30th, and in the Tyrone Times on October 3, 1935. These papers are "newspapers of general circulation." The selection of the location was made, and notice thereof given, pursuant to Article II, Section 201(c) and Article III, Section 301 of the amendatory "Pennsylvania Liquor Control Act" of July 18, 1935, P. L. 1246, 1251-3. The applicable portions of the act read:

"Section 201. General Powers of Board.—Under this act, the board shall have the power and its duty shall be: ...... (c) To determine the municipalities within which Pennsylvania Liquor Stores shall be established, and the locations of the stores within such municipalities ......

"Section 301. Board to Establish State Liquor Stores.—The board shall establish, operate, and maintain, at such places throughout the Commonwealth as it shall deem essential and advisable, stores to be known as 'Pennsylvania Liquor Stores,' for the sale of liquor and alcohol in accordance with the provisions of, and the regulations made under, this act. When the board shall have determined upon the location of a liquor

store in any municipality, it shall give notice of such location, by public advertisement, *in at least two newspapers of general circulation.* If, within *five days* after the appearance of such advertisement, fifteen or more taxpayers, residing within a quarter of a mile of such location, shall file a protest with the court of quarter sessions of the county, averring that the location is objectionable because of its proximity to a church, a school, or to private residences, the court shall forthwith hold a hearing affording an opportunity to the protestants and to the board to present evidence. The court shall render its decison immediately upon the conclusion of the testimony, and from its decision there shall be no appeal. If the court shall determine that the proposed location is undesirable for the reasons set forth in the protest, the board shall abandon it and find another location." (Italics supplied)

The protest was not filed with the court below until February 29, 1936, and the ground for its dismissal, and the refusal of a hearing thereon, was that it had not been filed within five days after the appearance of the above mentioned advertisements. The reply of appellants to this objection was that notice of the selection of the proposed location had never been duly and legally given because, as Blair County is a county of the fifth class and the Blair County Legal Journal, a legal newspaper issued weekly therein, had been designated by a rule of court for the publication of legal notices, the notice of the selection of the location should also have been inserted in that publication.

This contention is based upon the provisions of the Act of May 3, 1909, P. L. 424, as amended by the Acts of April 5, 1917, P. L. 49, April 30, 1925, P. L. 401, and April 9, 1931, P. L. 20, which provides in substance, that in all counties of, inter alia, the fifth class every notice or advertisement, required by law or rules of court to be published in one or more "newspapers of

general circulation," shall, with certain exceptions not here applicable, also be published in such "legal newspaper" as may have been designated by rules of court for the publication of legal notices.

In his opinion supporting the order appealed from, the learned president judge of the court below reached the conclusion that the Act of 1909, as amended, had been repealed, in so far as giving notice by publication of the proposed location of liquor stores is concerned, by the Pennsylvania Liquor Control Act of 1935, supra. This holding raises the question of law to be determined upon this appeal.

A majority of the members of this court cannot agree with this conclusion of the court below. The Act of 1909 was not cited for repeal in the repealing section of the Act of 1935, but the latter contains the following general repealing clause: "All other acts and parts of acts, including special or local acts, inconsistent herewith are hereby repealed." In considering whether the provisions of the Act of 1909, requiring the publication of legal notices in legal journals, are so inconsistent with the provisions of the Act of 1935, relative to giving notice to the public of the selection of sites for liquor stores, that both cannot stand, several matters should be noted. In the first place, the legislature declared in the preamble to the Act of 1909 that the convenience of the public, as well as that of the legal profession, would be served by requiring legal notices to be published in designated "legal newspapers."

It was then provided: "That hereafter in all counties of the first, second, third, fourth, and fifth class of the Commonwealth, every notice or advertisement required by law or rules of court to be published in one or more newspapers of general circulation, unless dispensed with by special order of court, shall also be published in the legal newspaper, issued at least weekly, in said county, designated by rules of court for the

publication of court or other legal notices, if such news-
paper exists.  Publication in such legal newspaper shall
be made as often as required to be made in such news-
papers in general circulation, and shall be subject to
the same stipulations and regulations as those imposed
for the like services upon all newspapers."

By this enactment the legislature has made a clear
distinction between "newspapers of general circulation"
and "legal newspapers."  The provisions of the statute
seem to us to be equivalent to saying that whenever any
law enacted subsequent to May 3, 1909, or any rule
of court, requires any notice to be published in one or
more "newspapers of general circulation," that notice
shall, also, or in addition thereto, be published in the
designated "legal newspaper."  In effect, the act pro-
vides for an additional and more adequate notice to
those whose rights may be affected thereby in every
instance where "any notice or advertisement [is] re-
quired by law."

We think the notice here in question falls within the
class of notices intended to be covered by the general
provisions of the statute.  It is not only a notice ex-
pressly required by the Act of 1935, but is also not
comparable with any of the kinds of notices excluded
from the operation of the Act of 1909 by the proviso
that nothing therein shall be construed to require pub-
lication in a legal newspaper of "municipal ordinances,
mercantile appraisers' notices," etc.  The class of
notices excluded by the proviso has been enlarged from
time to time; if the legislature had intended that
notices of the proposed locations of liquor stores need
not be published in "legal newspapers," the natural
and easy way to have indicated that intent would have
been to further amend the Act of 1909 by including
them under its proviso.

Again, it is to be noted that the Act of 1935 does
not prohibit publication of the notice in a "legal news-

paper," in addition to insertion in "newspapers of general circulation." The command of the statute is merely that the notice be published "in *at least* two newspapers of general circulation."

We think the principle upon which this case should be decided was declared by this court in *Kulp v. Luzerne County,* 20 Pa. Superior Ct. 7. That case was an appeal by the County of Luzerne from a judgment holding it liable for the cost of publishing a liquor license list in the Luzerne Legal Register in February, 1901. By the Act of February 12, 1863, P. L. 28, "Relating to the Publication of Legal Notices, in Luzerne County," it was provided that, "in addition to the publication required by the existing laws of this Commonwealth," the courts of Luzerne County might, by rule, designate "one weekly legal publication" in which should be published an abstract of all legal notices required to be published. By a rule of the common pleas and quarter sessions the Luzerne Legal Register was designated. The Act of July 30, 1897, P. L. 464, regulating the granting of liquor licenses to wholesale dealers, brewers, etc., provided in the third section thereof that every person intending to apply for license under its provisions should file a petition with the clerk of the court of quarter sessions a specified time in advance of the session at which the same would be heard; "and said clerk shall cause to be published two times in three newspapers designated by him, one of which may be printed in the German language, a list containing the names of all such applicants, their respective residences, and the place for which application is made." This act did not specifically repeal the Act of 1863, but contained a provision that all "acts or parts of acts, general or special, inconsistent herewith be and the same are hereby repealed."

After remarking that the publication provided for in the Act of 1897 "is not limited to three newspapers,"

which, as already stated, is equally true in the case at bar, and after quoting from the Acts of 1863 and 1897, the opinion writer for this court continued: "It is argued by the appellant that, under the provisions relating to publication and repeal as above quoted, the Act of 1863, supra, is, by the general repealing clause and by necessary implication, repealed. We do not so regard it. The Act of 1897 is not necessarily inconsistent with the Act of 1863. The provision in the latter is for notice of publication in addition to the publications then required by existing laws and can be construed to be in addition to the publication which might thereafter be required by legal enactment, and this we take it is the correct legal construction, in the absence of a clause specifically repealing the Act of 1863. It was so held in *Kulp v. Luzerne County*, 7 Kulp, 312, so far as the Act of 1887 was concerned. The Act of 1897, although containing a general repealing clause as to laws inconsistent therewith, does not in legal effect repeal the Act of 1863 any more than did the Act of 1887. We think the two acts can stand together, without inconsistency or repugnance and should be so construed."

In the later case of *Sun & Banner Pub. Co. v. Bennett*, 26 Pa. Superior Ct. 243, our late President Judge, PORTER, in considering the special Act of April 10, 1873, P. L. 600, relating to legal advertisements in the County of Lycoming, and the liquor license law of 1897, supra, and in distinguishing the case then in hand from that of *Kulp v. Luzerne County*, supra, said, at page 248: "Had the local act provided for some publication in addition to that required by other statutes, there would be no repugnancy and the two acts could have stood together."

Another well considered case applicable to the question now before us is *Pittsburgh Legal Journal v. Bruff*, 19 Dist. Rep. 591, 57 Pgh. L. J. 577. By the Act of

April 6, 1871, P. L. 476, relating only to Allegheny County, it was provided, inter alia, that the sheriff should give notice of all judicial sales by him by printed hand bills "and also by advertisements published three times before the day of sale, once in each consecutive week in one daily English and in one daily German newspaper, printed in the City of Pittsburgh" etc. The question in that case was whether the Act of 1909, with which we are here concerned, superseded and repealed that special act. It was held that they could be construed together, and in the course of the opinion it was said: "But if the two acts may be enforced together, neither interfering with the other, then there is no reason why both acts should not be enforced, and the sheriff advertise his legal sales in the Pittsburgh Legal Journal."

The principle upon which these decisions are based is the familiar one thus reaffirmed in *Nyce et al. v. Commissioners et al.*, 319 Pa. 353, 179 A. 584: "It is a fundamental principle that all statutes in pari materia, relating to the same subject, shall be construed concurrently whenever possible: *White v. Meadville*, 177 Pa. 643; *Duffy v. Cooke*, 239 Pa. 427; *Buttorff v. York*, 268 Pa. 143; *Com. v. Provident Trust Co.*, 287 Pa. 251, 259; *Com. v. Lomas*, 302 Pa. 97. If two statutes can be made to stand together, effect should be given both as far as possible: *Brown v. Co. Comrs.*, 21 Pa. 37; *Ulrich's Case*, 267 Pa. 233, 236; *Garr v. Fuls*, 286 Pa. 137, 148."

Our conclusion is that there is no repugnancy between the Act of 1909 and the provisions of the Act of 1935 here involved and that the notice should also have been published in the Blair County Legal Journal. Ordinarily, the effect of failure to give notice in the manner required by law is that the entire proceeding is rendered invalid. See *Road in Upper Hanover*, 44 Pa. 277, where the proceedings were quashed because

notice of the view had not been properly published. Considering, however, the nature of the present proceeding, we think the rights of all parties will be protected and the purpose of the legislation effected by reinstating the protest and making absolute the rule for a hearing thereon.

The order appealed from is reversed and the record remitted to the end that the protest may be reinstated and a hearing had.