## Bloom et al. v. City of Scranton

Before Hoban, P. J., and Eagen and Robinson, JJ.
The facts appear from the adjudication of

HOBAN, P. J., May 10, 1948.—These are taxpayers'
bills seeking to enjoin the collection of taxes levied
by the City of Scranton by ordinance, file of the council
no. 4, 1948. This ordinance purports to levy what is
generally known as a city earnings tax upon various
classes of taxpayers and imposes duties on taxpayers
to file returns and upon employers to withhold taxes
from employes' wages and salaries. Plaintiffs and in-
tervening plaintiffs, together with the Scranton Lace
Company, one of the defendants in no. 13, April term,
1948, represent all of the types of taxpayers other than
noncorporate associations subject to the tax or who
have duties imposed upon them by the ordinance.

The procedural situation should be noted. For con-
venience we shall refer to no. 13, April term, 1948, as
the Bloom case and to no. 14, April term, 1948, as the
Moser case.

On March 27, 1948, plaintiffs in the Bloom case
filed a bill in equity asking that the ordinance be de-
clared void and that defendants be restrained from
collecting or receiving the taxes. On March 29, 1948,
plaintiffs in the Moser case filed their bill asking that
the ordinance be declared void, that the city treasurer
be required to return any moneys so collected by him,
that an injunction issue against the collection and re-

ceipt of the taxes, and that a preliminary injunction issue after hearing until final determination of the matter. Rule was granted to show cause why such preliminary injunction should not issue, returnable April 3, 1948.

On March 30, 1948, Williams Baking Company, a corporation with its principal place of business at Scranton, asked leave to, and was permitted to, intervene in the Moser case as a party plaintiff.

On March 31, 1948, the International Textbook Company, another corporation with its principal place of business in the City of Scranton, asked leave to, and was permitted to, intervene in the Moser case as a party plaintiff.

On April 2, 1948, plaintiffs in the Bloom case asked leave to, and were permitted to, amend their bill to include a prayer for a preliminary injunction similar to that in the Moser case and a rule thereon was made returnable to the same time as the rule in the Moser case. It was the intention of the parties, the solicitor for the City of Scranton and the court, so far as possible, to gather together all of the objections to be raised against the ordinance, or its operation, to be litigated at one time.

On April 3, 1948, the City of Scranton and Edward J. Coleman, city treasurer, filed preliminary objections to the bills in both cases, the gist of which was that there is no jurisdiction in equity to entertain these bills for the reason that the procedure prescribed by the Act of June 25, 1947, P. L. 1145, 53 PS §2015.1, and generally known as the Stonier-Brunner Bill, provides an adequate remedy at law by prescribing a method for challenging the ordinance or any of the provisions thereof in an appeal therefrom to the court of quarter sessions, which method was not followed by the taxpayers who appear as plaintiffs in these bills. On that date, by agreement of counsel for all the parties concerned, the rules to show cause why a prelim-

inary injunction should not issue were postponed to April 21, 1948, which date was also set for argument on the preliminary injunctions.

On April 21, 1948, preliminary objections were argued before the court en banc, consisting of Hoban, P. J., and Eagen and Robinson, JJ. At the conclusion of the argument the court en banc overruled the preliminary objections in each case and directed defendants to answer.

The parties then proceeded to a hearing before Hoban, P. J., as chancellor, on the rules to show cause why a preliminary injunction should not issue. It was agreed that since the facts in both bills are similar, the rules for preliminary injunctions be considered in one proceeding. The parties thereupon in open court stipulated the various matters of fact involved, and the pleadings, together with the stipulation, constitute the record from which the facts are to be determined.

The city solicitor then moved to discharge the rules for preliminary injunctions. The court considered the motion to discharge unnecessary, since the burden was on plaintiffs to sustain the rules by the facts and the law. Thereupon counsel for all parties agreed that the stipulations could be considered as testimony as if on final hearing, and that the court could proceed to determine the matter as if a final hearing was had. After that agreement the city solicitor on behalf of defendants, the City of Scranton and the city treasurer, filed its formal answers to the bills in each case.

By stipulation filed between plaintiffs in the Bloom case and counsel for the City of Scranton and the Scranton Lace Company, defendant, the Scranton Lace Company joined in the answer filed by the City of Scranton and the city treasurer and in the agreement to accept the testimony taken on the rule for preliminary injunction as if on final hearing.

No opinion was written to support the order of the court en banc overruling the preliminary objections to

the bills, because it was the belief of the court that the subject matter of the objections would be adequately treated in the disposition of the rules for preliminary injunction and upon the final hearing on bill and answer. Procedurally, therefore, the cases are now ripe for adjudication upon bill, answer and the stipulated facts.

## The pleadings

The bills in equity aver the various interests of plaintiffs, intervening plaintiffs and defendant, Scranton Lace Company, as individual taxpayers or representatives thereof, both residents and nonresidents of the City of Scranton, and as such subject to the imposition of the tax laid under ordinance, file of the council no. 4, 1948, of the City of Scranton, and of the corporations as employers with their principal places of business in the City of Scranton, who are required under the ordinance to make returns, collect taxes from their employes and transmit the same to the city treasurer; that ordinance, file of the council no. 4, 1948, of the City of Scranton was adopted on January 19, 1948, after appropriate advertising in a newspaper of general circulation in the City of Scranton, but without advertising notice of intention to pass such ordinance in the legal publication designated by the Rules of Court of Lackawanna County for the publication of legal notices; that the ordinance purports to impose a one percent tax on salaries, wages, commissions and other compensation earned by Scranton residents or by nonresidents of Scranton for work or services in Scranton, and on the net profits of noncorporate entities domiciled in Scranton or earning such net profits in Scranton; that the ordinance is void and illegal for the following reasons:

(a) Because the city authorities failed to give required legal notice of intention to pass the said ordinance as required by the Newspaper Publishing Act of May 16, 1929, P. L. 1784, as amended, by failing to

publish such intention in the Lackawanna Jurist, a legal publication of the county.

(b) Because the ordinance designated the City Treasurer of the City of Scranton as the collector and receiver of the tax levied under the ordinance, instead of designating the duly elected Tax Collector for the City of Scranton, the collector for all taxes to be paid by taxable subjects in Scranton, under the Act of May 8, 1929, P. L. 1643, 53 PS §10781.

(c) Because employers under the ordinances are obligated to collect taxes without remuneration therefor, contrary to the provisions of the Act of April 17, 1866, P. L. 966, an act to facilitate the collection of taxes in the Counties of Carbon and Luzerne.

(d) Because the ordinance obligates employers to collect and return the taxes thereunder from employes without providing for reimbursement for the expenses incidental to such collection.

(e) Because the ordinance fails to provide a system of credits to be deducted from the assessable tax for similar taxes paid by residents of another municipality to such other municipality, under similar ordinances or resolutions, contrary to the provisions of section 5 of the Stonier-Brunner Act.

(f) Because the ordinance is void as in conflict with section 1 of article IX of the Constitution of Pennsylvania in that it was not enacted under general law.

The prayers of the bills ask for injunctions restraining defendants from collecting the tax and applying funds derived therefrom to the use of the city, for affirmative relief by declaration that the ordinance is void, and by requiring the city treasurer to return to plaintiffs any money paid by them to the city treasurer as taxes levied under the ordinance, and for general relief.

The answers admit the pertinent facts set forth in the bills, but challenge the legal conclusions sought to

be drawn by plaintiffs and aver that no right to this relief prayed for is established under the facts.

From the pleadings, exhibits and stipulations, we make the following

## Findings of fact

1. Through its proper officials the Council of the City of Scranton duly advertised its intention to pass ordinance, file of council no. 4, 1948, in the Scranton Times, a newspaper of general circulation in the City of Scranton on December 20, 1947, December 27, 1947, January 3, 1948, and January 10, 1948.

2. No advertisement of intention to pass said ordinance was made in the Lackawanna Jurist, the legal publication designated by the Rules of Court of Lackawanna County for the publication of legal notices.

3. On January 19, 1948, the Council of the City of Scranton adopted ordinance, file of council no. 4, 1948, and James T. Hanlon, Mayor of Scranton, approved the said ordinance on the same day.

4. The ordinance imposed an annual tax for general revenue purposes of one percent on (a) salaries, wages, commissions and other compensation earned on or after February 20, 1948, by residents of Scranton, and on (b) salaries, wages, commissions and other compensation earned on and after February 20, 1948, by nonresidents of Scranton, for work done or services performed or rendered in Scranton, and on (c) the net profits earned on and after February 20, 1948, of businesses, professions and other activities conducted by such residents, and on (d) the net profits earned on and after February 20, 1948, of businesses, professions or other activities conducted in Scranton by nonresidents: Ordinance, sec. 2.

5. By section 4 of the ordinance, employers within the City of Scranton who employ one or more persons on a salary, wage, commission or other compensation

basis, are required to deduct monthly, or more often according to the payroll period, the tax from such salaries, wages, commissions and other compensation and make return and pay the same to the city treasurer on the fifteenth day of the month following the deduction.

6. The ordinance does not provide any compensation or commission to employers making returns of such taxes deducted at the source, or provide for such employers any allowance for any expenses incurred in the collection and return of such taxes from the source.

7. The City Treasurer of the City of Scranton is designated by section 5 of the ordinance as the collector and receiver of the taxes levied thereunder and by section 6 of the ordinance is charged with the enforcement of its provisions, authorized to prescribe rules and regulations for its administration, and granted authority to examine the records of employers or supposed employers to verify the accuracy of tax returns made under the ordinance, or if no return is made to ascertain the tax imposed.

8. Section 9 of the ordinance imposes penalties by fine or imprisonment for failure to pay the taxes or a violation of duties imposed on taxpayers and employers by the ordinance, and section 11 of the ordinance makes the various sections severable if one or more should be declared to be unconstitutional, illegal or invalid for any reason.

9. Andrew P. J. Best, of the City of Scranton, is the duly elected, qualified and acting collector of taxes in the City of Scranton, was serving as such on the date of the passage of said ordinance and is now serving as such collector of taxes under the provisions of the Act of May 8, 1929, P. L. 1643, as amended, 53 PS §10781, providing for a single tax collection office for cities of the second class A.

10. The City of Scranton is classified as a city of the second class A under the Act of March 9, 1927, P. L. 18, 53 PS §1.

## Discussion

Essentially these taxpayers' bills seek to declare the Scranton Earnings Tax Ordinance ineffective to impose a tax on plaintiffs or duties on employers because of defective passage, omission of necessary safeguards and as an unconstitutional attempt to exercise the taxing power. In Pennsylvania the classic attack against an illegal tax is by bill in equity. Regardless of the limitations in section 3 of the Stonier-Brunner Act as to the number of appellants and the time for appeal, a single taxpayer must have his right to protect his money or property from confiscation under an illegal taxing statute or ordinance. To hold otherwise would be to subject the taxpayer to be deprived of his property without due process.

The matter is definitely settled in the recent case of English v. Robinson Township School District, 358 Pa. 45, 55 A. (2d) 803, decided by the Supreme Court of Pennsylvania, November 26, 1947, construing this same statute and section. From the opinion by Mr. Justice Stearne, at page 55:

"The courts are open to the taxable to challenge the tax, as the plaintiffs are doing in this suit. The fact that the right of appeal against the resolution or ordinance before the date at which it becomes effective provided for in section 3 of the statute is limited is immaterial; due process does not require such a privilege; indeed, if there were any basis for the argument of unconstitutionality based on this provision of the statute the result would be merely to strike it out of the act pursuant to the severability provision contained in Section 8. Due process is not wanting in this case because it has long been settled in this Commonwealth that a plaintiff may go into equity to restrain attempted taxation for want of power to tax: Dougherty, Trustee, v. Philadelphia et al., 314 Pa. 298, 301, 171 A. 583. In such circumstances there is no want of due process."

In the English case, the taxpayer sought to have section 3 of the act declared unconstitutional as depriving the taxpayer of due process. While the Supreme Court refused to make such a declaration, it confirmed the taxpayers' right to challenge a tax for illegality by bill in equity. Hence, in these proceedings defendant cannot deprive plaintiffs of the same right by reliance on the section. We therefore, hold that the action of this court in dismissing the preliminary objections to the respective bills in equity was correct and that the operation of section 3 of the Stonier-Brunner Act is no bar to these proceedings.[1]

Passing to the merits of the cases, we discuss the questions involved in the order in which the objections are stated in the Moser case.

The Newspaper Advertising Act of May 16, 1929, P. L. 1784, sec. 7, 45 PS §7, provides that no legal proceeding, matter or case in which notice is required to be given by official or legal advertising shall be binding and effective unless such advertising be printed and published in the newspapers of general circulation and legal newspapers in the manner and as required by existing statutes and by acts of assembly thereafter enacted.

The Act of July 28, 1941, P. L. 521 (amending the Act of May 3, 1909, P. L. 424, as amended), 45 PS §39, including Lackawanna County within its scope, provides that:

". . . every notice or advertisement required by law or rules of court to be published in one or more newspapers of general circulation, unless dispensed with by special order of court, shall also be published in the legal newspaper, issued at least weekly, in said county, designated by rules of court for the publica-

---

[1] Other recent cases using bills in equity to attack tax ordinances passed under authority of the Stonier-Brunner Act: McClelland v. Pittsburgh, 358 Pa. 448; Federal Drug Co. v. Pittsburgh, 358 Pa. 454. The Supreme Court took original jurisdiction in both cases.

tion of court or other legal notices, if such newspaper exists. Publication in such legal newspaper shall be made as often as required to be made in such newspapers in general circulation, and shall be subject to the same stipulations and regulations as those imposed for the like services upon all newspapers: provided, that nothing herein contained shall be construed to require the publication in such legal newspapers of municipal ordinances, . . . mercantile appraisers' notice, advertising for bids for contracts for public work, or lists of delinquent taxpayers. 1909, May 3, P. L. 424, Sec. 1; 1917, April 5, P. L. 49, Sec. 1; 1925, April 30, P. L. 401, Sec. 1; 1931, April 9, P. L. 20, No. 19, Sec. 1."

The Lackawanna Jurist is the "legal newspaper" in this county as defined in the Advertising Acts, supra.

Only two cases construing the Act of 1909 and its amendments seem to have reached our appellate courts, in which the effect of failure to advertise in the legal newspaper, where a law required only advertising in a newspaper of general circulation, was considered.

In Patterson v. Pa. Liquor Control Board, 125 Pa. Superior Ct. 192 (1937), the Superior Court held that the requirement in the Pennsylvania Liquor Control Act of July 18, 1935, P. L. 1246, to publish notice of the proposed location of a State store in two newspapers of general circulation, without more, did not repeal by implication the Act of 1909, as amended, was not inconsistent therewith, that the two acts could be read together, and that because of failure to publish the notice in the county legal newspaper the notice as published was ineffective to bar a formal protest and hearing thereon, the right to which would otherwise have been lost. But the court refused to declare the entire proceeding invalid on the ground of ineffective notice, considering that justice would be done by reinstating the protest and ordering a hearing thereon.

In the recent case of Turner v. Keck, 357 Pa. 387 (September 27, 1947), the Supreme Court considered this situation: A county treasurer prepared to sell seated and unseated lands for delinquent taxes. The applicable law requires the county treasurer to advertise tax sales in two newspapers of general circulation, and such advertisement was made. A taxpayer secured a preliminary injunction enjoining the sale until advertisement was made in the county legal newspaper. Thereupon the county treasurer petitioned for declaratory judgment and the decree adjudged that the treasurer was under the duty to publish the list of lands to be sold in the county legal newspaper prior to the sale, but also decreed that no readvertisement in the newspapers of general circulation was necessary.

In a per curiam opinion the Supreme Court held that in view of the Acts of 1909 and 1941, when the acts governing treasurers' sales required publication in newspapers of general circulation, it followed that advertisement in such cases must also be made in the legal newspaper of the county. The court then used this significant language:

"We are not called upon at this time to consider whether the requirement of such additional advertisement is mandatory or simply directory and whether, if not made through neglect or inadvertence, the title of a purchaser at the sale is thereby invalidated."

The Supreme Court agreed with the court below that readvertisement in the general newspapers was unnecessary but required to be published a brief notice announcing the new date to which the sale had been adjourned.

From these cases it is clear that where notices or advertisements are required by particular statutes to be published in newspapers of general circulation, the responsible authority is likewise required to make similar publication in the county legal newspaper, unless the particular statute specifically excludes such

requirement, or the notice is within the exempted classes specified in the Act of 1941, or the requirement is dispensed with by special order of court; but that the failure to make such publication does not necessarily invalidate every action of public authorities in matters requiring publication by notice or advertisement.

The Act of 1941 specifically exempts the publication of municipal ordinances in legal newspapers from its requirements. Plaintiffs contend that this exemption does not carry with it an exemption from the requirement of the Stonier-Brunner Act to publish prior notice of *intention to pass* a taxing ordinance, and that reading the Stonier-Brunner Act and the Advertising Acts together, under the principles expressed in Pittsburgh v. Pennsylvania Liquor Control Board, supra, and Turner v. Keck, supra, publication of the prior notice in the legal newspaper is required: therefore, failure to follow the express provisions of the law as to publication made the ordinance of no effect. See Fierst et al. v. William Penn Memorial Corp., 311 Pa. 263.

The pertinent provisions of section 2 of the Stonier-Brunner Act are as follows:

"Prior to the passage of any ordinance or the adoption of any resolution imposing a tax or license fee under the authority hereunder granted, such political subdivision shall give notice of the intention to pass such ordinance or adopt such resolution. Such notice shall be given in addition to all other notices required by law to be given and shall set forth the substantial nature of the tax or license fee to be imposed by the proposed ordinance or resolution. Publication of such notice shall be made by advertisement once a week for four weeks in a newspaper of general circulation within such political subdivision."

The legislative practice has been confusing. In some statutes requiring notice by public authorities to be

given by advertisement in newspapers of general circulation no mention is made of the necessity for publishing such notice in the legal newspapers, and in others specific requirements are laid down for publication in legal newspapers as to specific items. For instance in The First Class Township Law (Act of June 24, 1931, P. L. 1206, sec. 110, 53 PS §19092-110) it is provided that where notice is required to be published under the law, it shall be made in a newspaper of general circulation, but when such notice relates specifically to any proceeding or matter in any court, or to a holding of an election for the increase of an indebtedness, or the issue and sale of bonds to be paid by taxation, those specific notices, where the township is in the class of counties covered by the Act of 1909, as amended to that date, are also required to be published in the legal newspaper. On the principle of inclusio unius exclusio alterius, one would reason that advertisement other than those specifically required to be published in the legal newspaper would need only to be published in newspapers of general circulation, regardless of the effect of the Act of 1909.

I am of the opinion that the same reasoning must be applied to the cases at bar. The proviso of the Act of 1941 that "nothing herein contained shall be construed to require the publication in such legal newspaper of municipal ordinances" indicates a clear intention to exempt municipal bodies from publishing any legal notice with reference to municipal ordinances in the county legal newspaper. The phrase in section 2 of the Stonier-Brunner Act, "in addition to all other notices required by law to be given", obviously refers to the provision of the existing law requiring the publication of municipal ordinances. In the case of cities of the second class A this returns us to The Second Class City Act of March 7, 1901, P. L. 20, and the supplement of June 7, 1911, P. L. 667, 53 PS §9505, covering the recording and publication of ordinances, which pro-

vides that city ordinances shall be published twice in each of the official newspapers of the city within 10 days after their enactment and approval. We can conceive of no more valid reason for the inclusion of the notice of intent to pass a municipal ordinance in the type of advertising required to be published in legal newspapers than there would be for requiring the publication in such newspapers of the ordinance itself, while there is a perfectly valid reason for requiring notice of such intent to be given in newspapers of general circulation. It seems to us that if the legislature thought so it would have said so specifically. We conclude, therefore, that the publication requirements of the Stonier-Brunner Act were complied with so far as the enactment of the Scranton Earnings Tax Ordinance is concerned.

The City of Scranton as a city of the second class A has a collector of taxes who by law is "charged with the duty of collecting all city, county, school and poor taxes collectible within the territorial limits of cities of the Second Class A": Act of May 8, 1929, P. L. 1643, as amended, 53 PS §10782. By the act just cited taxing authorities are required to turn over tax duplicates to the collector of taxes and his duties and authority are detailed. Cities of the second class A are also subject to an act which provides for a uniform method for the assessment and collection of all taxes through the office of the collector of taxes, which act provides generally for the levy and collection of all taxes for county, city, school district and poor district use within the territorial limits of cities of the second class A at the same time and on a single tax statement, with appropriate provisions for discounts for payment within certain periods and penalties for delinquent payments: Act of April 26, 1935, P. L. 90, as amended, 53 PS §10793, et seq. These two acts together provide a single tax collector and a single tax collection system for the City of Scranton.

Plaintiffs argue that the system for collection of the earnings tax and the designation of the city treasurer as the collector and receiver of such tax under the ordinance is in complete disregard of the laws governing the single tax collection system and is, therefore, invalid. Section 5 of the ordinance designates the city treasurer to collect and receive the tax imposed by the ordinance, to appoint such assistants and employes as may be necessary and to keep records of payment by the taxpayer subject to the ordinance. Section 6 of the ordinance charges the city treasurer with the enforcement of its provisions and authorizes him to adopt and promulgate rules and regulations for its administration, and further authorizes him to examine the records of taxpayers and employers to verify the accuracy of returns, or to ascertain the tax due under the ordinance. Section 7 of the ordinance provides for interest and penalties upon delinquent taxes and taxpayers. In other words, the ordinance purports to set up a complete system for the collection of the earnings tax without reference to and obviously at variance with the single tax collection system established by the acts cited above.

Prior to the passage of the Stonier-Brunner Act the only taxes payable for city, county, school district and poor district use by taxables within the territorial limits of cities of the second class A were taxes directly assessed against property owned by taxables or personal taxes assessed against taxables subject to the jurisdiction of the city. The Stonier-Brunner Act permits municipalities, including a city of the second class A, to assess and collect taxes on "persons, transactions, occupations, privileges, subjects and personal property" within the limits of the municipality, thus giving such municipalities a wide field of taxation, limited only where the State has preëmpted for its own use a specific subject of taxation. A delegation of such power to

municipalities is lawful: English v. Robinson Twp. School District, 358 Pa. 45.

Section 4 of the Stonier-Brunner Act reads as follows:

"Any such political subdivision is hereby authorized to provide by ordinance or resolution for the creation of such bureaus or the appointment and compensation of such officers, clerks, collectors and other assistants and employes, either under existing departments, or otherwise as may be deemed necessary, for the assessment and collection of taxes imposed under authority of this act."

If the State may delegate the power to tax, there is no logical reason why it may not also delegate to a municipality the power to provide for the collection and assessment of taxes, and in this instance it has done so, in so many words, by section 4 of the Stonier-Brunner Act. Insofar as this section provides by delegation or otherwise a system of collection of the particular tax to be levied under authority of the act, it must be held to repeal by implication so much of the acts governing the single tax collection system as would otherwise require the city to submit duplicates of assessments levied against taxables subject to the new taxes levied by the ordinance to the collector of taxes.

The Act of April 17, 1866, P. L. 966 (not reported in Purdon's Pennsylvania Statutes), entitled "An Act to facilitate the collection of taxes in the Counties of Carbon and Luzerne", and apparently never specifically repealed, provides for a system of notice by tax collectors in their bailiwicks of the receipt of their duplicates and of the place of their "respective boroughs, townships or districts" where payment of the taxes contained in the duplicates will be required within a certain time from the posting of such notices, not less than 30 days thereafter.

The act further provides that after the expiration of the designated time period the collectors may, in

addition to other methods provided by existing laws for the enforcement of tax collection, give notices to known debtors of taxables or to persons who the tax collector may believe will become indebted to the taxable within six months after the time for payment of the taxes, and may require such debtors to pay the taxes charged in such notices on behalf of the taxable, out of the amount due by the debtor to the taxable. Upon payment of the tax or any part thereof by the debtor, he became entitled to retain two percent commission, to be deducted from the tax collector's own commissions for collection.

The argument of plaintiffs is that the Act of 1866 never having been specifically repealed, any tax collection system now provided for the City of Scranton, which territorially in 1866 was part of the County of Luzerne, must now provide a similar commission to employers who are required to withhold taxes from wages, salaries, commissions or other compensation due by them to their employes.

There are several answers to this proposition. First, the remedy provided to tax collectors in the Act of 1866 was discretionary with the tax collectors, to be used in furtherance of their collections, at their option; and if the City of Scranton, assuming that it is subject to the provisions of the act, chooses not to adopt that type of remedy, it has its choice.

Secondly, the City of Scranton was incorporated as a city by the Act of April 23, 1866, P. L. 1034, and the Charter Act provided a system for the assessment and collection of city taxes by the city authorities. Insofar as the Charter Act provided its own system, it repealed pro tanto any system which might otherwise control as set up in the special act for Carbon and Luzerne Counties. The city then successively came under the laws regulating cities of the third class, cities of the second class, and cities of the second class A, and under the various systems of assessment and collection of

taxes provided by general law. As these systems developed they presented complete and exclusive methods for the assessment and collection of taxes and replaced or repealed by implication the Act of 1866. Granting that obsolescence or nonuser does not effect the repeal of a statute (Statutory Construction Act of May 28, 1937, P. L. 1019, secs. 92 and 93, 46 PS §§592 and 593), nevertheless where new systems purport to be revisions of all laws upon a particular subject, or set up general or exclusive systems covering the entire subject matter of the former law, such laws shall be construed to repeal all former laws upon the same subject (Statutory Construction Act, supra, sec. 91).

Whether repealed or not, the Act of 1866 can have no application to the collection of taxes within the City of Scranton for it is neither a borough, a township nor a district within the meaning of the Act of 1866.

We cannot agree with the theory advanced by plaintiffs that the Stonier-Brunner Act contemplates payment of compensation or expenses to employers for withholding and returning taxes on employes' earnings, or that the ordinance must make such provision or be invalid. Section 4 of the act, supra, authorizes ordinances to provide for the appointment and compensation of collectors and assistants "either under existing departments or otherwise *as may be deemed necessary*". Section 5 of the ordinance places upon the city treasurer the duty of appointing such collectors and assistants "as may be deemed necessary" and to fix their compensation. Whatever may be permissive under the act with reference to compensating employers for expense involved in collection at the source, nowhere in the enabling act is there any duty imposed to provide such compensation, nor have we been shown or by our own research found any authority to the contrary.

The Sterling Act (Act of August 5, 1932, Special Session, P. L. 45, 53 PS §4613), under which Philadel-

phia has passed an ordinance taxing earned incomes very similar in its provisions to the Scranton ordinance, imposes no such duty, nor does the Philadelphia ordinance provide for such compensation, nor has apparently any question been raised to establish the right to such compensation for employers under the Philadelphia ordinance. It may be true that specific tax collection statutes do provide for the payment of expenses or commissions to employers for collecting taxes at the source. An instance is the Local Tax Collection Law (Act of May 25, 1945, P. L. 1050, sec. 20, 72 PS §5511.20). However, cities of the first class and second class and second class A and school districts in cities of the second class A are specifically exempted from the application of the Local Tax Collection Law. The Cigarette Tax Act of March 27, 1945, P. L. 71, as amended by the Act of May 13, 1947, P. L. 215, 72 PS §3154, provides for the collection of the tax on cigarettes by the sale of stamps, authorizes the Department of Revenue to appoint wholesale dealers as agents for the sale of stamps, and grants them a commission on such sales. But because the State in one piece of legislation authorizes the payment of commissions to employers or dealers for collecting taxes at the source, it does not follow that in every piece of legislation it is obliged to do so. It has not done so in the Stonier-Brunner Act.

The plaintiffs argue that to put an employer to time and expense in the collection of taxes by withholding from the wages of employes and the making of returns thereon, deprives such employers of property without compensation therefor and so is in violation of the due process clauses of the fifth and fourteenth amendments to the Constitution of the United States. No authority has been advanced to support this proposition. The Federal income tax laws provide for no such system, and one would think, if the contention of plaintiffs is correct in this instance, that the fifth amendment

would have compelled the Federal Government to grant compensation to employers who are compelled to withhold income tax from the wages of their employes. Every citizen owes the duty to assist in reasonable and convenient ways his representatives in government to carry on the business of government. Tax collection is a vital part of government. Without it government cannot function. So long as there is no actual expropriation of property, we cannot see that the operation of the Earnings Tax Ordinance in the City of Scranton violates in any way the due process clauses of the fifth and fourteenth amendments.

Where two municipalities enact a similar tax on earnings or net profits under the provisions of the Stonier-Brunner Act, the act provides that the municipality of residence of the individual taxpayer or noncorporate entity has priority in the collection of the tax, and that the tax so collected may be deducted from a similar tax which the same individual or noncorporate entity would otherwise be required to pay in the municipality of nonresidence.

Objection is made that the Scranton ordinance does not include this provision and is therefore invalid. The position is not tenable. To include a similar provision in the ordinance would be to simply repeat the law, which is effective regardless of the language of the ordinance. The ordinance, however, contains no provision contrary to the law and, as a matter of practical administration, regulations to be adopted under the ordinance must necessarily provide for the proper crediting of such taxes against the tax liability to the City of Scranton of any nonresident subject to the tax.

The remaining objection offered by plaintiffs is that the ordinance is void as in conflict with section 1 of article IX of the Constitution of Pennsylvania because it was not enacted under general law. The matter has been definitely settled by our Supreme Court in English v. Robinson Township School District, 358 Pa. 45,

where the same objection was raised as to a taxing resolution adopted by a school district. On page 52 of the report of the English case we find the following:

"We find no support for the objection that the statute is repugnant to the requirement that all taxes shall be uniform on the same class of subjects within the territorial limits of the authority levying the tax and shall be levied and collected under general laws. The statute undoubtedly is general, effective, as it is, throughout the State excepting in cities of the first class, an exception permitted by the classification provision of the Constitution: Article III, Section 34. The school district's resolution now before us is general in its provisions and is effective throughout the territorial limits of the school district."

The ordinance of the City of Scranton now before us is general in its provisions and is effective throughout the territorial limits of the city.

Our conclusion is that the ordinance, file of the council no. 4, 1948, of the City of Scranton, is a lawful exercise of the power delegated to the city by the Stonier-Brunner Act. It was passed after proper notice and in its provisions is not repugnant either to the enabling act or to any superior controlling legislation.

In reaching this decision we have due regard to the principal often announced by our higher courts and repeated in English v. Robinson Township School District, that the court is not concerned with the wisdom, need or appropriateness of this legislation. Courts do not pass upon legislative wisdom but upon legislative power; and in passing upon this ordinance we pass only upon its legality, without more.

### Conclusions of law

1. The ordinance, file of the council no. 4, 1948, of the City of Scranton was enacted pursuant to the legally required notice provided by the pertinent acts of assembly.

2. The designation of the City Treasurer of the City of Scranton as the collector and receiver of the tax levied under the ordinance was a lawful exercise of the legislative power of the city and is not in conflict with the provisions of the Single Tax Collection Acts.

3. The Act of April 17, 1866, P. L. 966, imposes no duty on the City of Scranton to require payment of commissions for the collection of taxes at source and the transmission thereof by employers to the city treasurer.

4. The City of Scranton is not required by ordinance to provide compensation or reimbursement of expenses to employers incurred in withholding taxes from earnings of their employes and returning and transmitting the same to the Treasurer of the City of Scranton.

5. The City of Scranton is not required to provide specifically by ordinance for the credits to be allowed to nonresident taxpayers against taxes due to the City of Scranton for similar taxes imposed by any other municipality.

6. The ordinance, file of the council no. 4, 1948, of the City of Scranton is not invalid for conflict with section 1 of article IX of the Constitution of Pennsylvania.

7. The ordinance, file of the council no. 4, 1948, of the City of Scranton is a lawful exercise of the taxing power lawfully delegated to it by the Legislature of Pennsylvania.

8. The bills in equity must be dismissed, at the costs of plaintiffs.

### Decree nisi

Now, May 10, 1948, upon consideration of the foregoing cases, it is ordered, adjudged and decreed as follows:

The bill in equity filed to no. 13, April term, 1948, is dismissed at the costs of plaintiffs.

The bill in equity filed to no. 14, April term, 1948, is dismissed at the costs of plaintiffs.

The prothonotary is directed to enter this decree and give notice; exceptions to follow as required by Equity Rules 68 and 69.

*Maurice V. Cummings, William Oliver* and *H. R. Van Deusen, Jr.,* for plaintiffs.

*James V. McNulty,* City Solicitor, and *John J. Scott,* Assistant City Solicitor, for the City of Scranton.

*C. H. Welles, 3rd,* for Scranton Lace Company, defendant.

*Opinion sur exceptions*

HOBAN, P. J., June 18, 1948.—Plaintiffs filed exceptions to the adjudication and decree nisi handed down by Hoban, P. J., as chancellor in the Scranton city earnings tax cases. The exceptions challenge the validity of the decree nisi, all of the conclusions of law and certain parts of the discussion by the chancellor of the facts and principles of law involved. We are of the opinion that the discussion by the chancellor correctly and adequately analyzed the matters of fact and correctly stated the principles of law involved, and agree with his conclusions and the decree nisi. Hence, the exceptions must be dismissed and a final decree entered dismissing the bills.

To the discussion of the chancellor we have only the following to add:

The publication of notice of intention to pass an ordinance or resolution required by section 2 of the Stonier-Brunner Act is specifically designated as a notice to be given "in addition to all other notices required by law to be given". The Newspaper Publication Act cited in detail in the adjudication specifically exempts municipal ordinances from publication in the legal newspaper. Under the laws governing cities of the second class A, therefore, if section 2 of the Stonier Act were not to be considered, the only notice required by law to be given of a city ordinance would be the

publication of the ordinance in full in newspapers of general circulation *after* its passage. The Stonier Act specifically requires an *additional* notice which by its terms is to be made prior to passage of the ordinance and not a new notice in any sense of the word. If the Stonier Act had not made specific mention of this type of notice as an addition to any legally required notice, there might be some merit to plaintiffs' argument that failure to publish this additional notice might affect the validity of the ordinance from its inception. But we can conceive of no way in which the legislature could more clearly express its intention to require one more specific notice, rather than an addition upon an addition, if plaintiffs' theory were to be accepted.

Plaintiffs conceive that the Scranton city ordinance attempts to divest the collector of taxes in Scranton of powers delegated to him by the Single Tax Collection Acts by the arbitrary whim of the city council, both in establishing the city treasurer as the collector of the city earnings taxes and by setting up a system of collection other than the single tax statement type, with quarterly payments as provided by the Act of 1935, P. L. 90, as amended (53 PS §10793, et seq.). If the ordinance conforms to the powers delegated to it by the Stonier Act, and we hold that it does so, then any divestiture of the powers of the collector of taxes has been accomplished by the legislature and not by the city council. But the legislature has the power to do so, and in section 1 of the Stonier Act the city is authorized to "provide for the levying, assessment and collection of such taxes . . .", and by section 4 of the Stonier Act the city is authorized to create bureaus, or provide for the appointment and compensation of officers, collectors, etc., either under existing departments or otherwise, as may be deemed necessary for the collection of the taxes imposed. The authority is clearly delegated to the city to provide its own system

for the collection of such taxes as may be levied by permission of the Stonier Act. It is, therefore, the language of the Stonier Act which causes the infringement, if any, of the powers of the collector of taxes under the Single Tax Collection Acts. Since the Stonier Act follows in point of time the Single Tax Collection Acts, the chancellor was correct in his statement that where the acts are inconsistent in operation, the prior acts are repealed pro tanto.

The questions arising under the Federal and State Constitution as to the failure of the ordinance to provide for compensation to employers required to collect the tax at the source and make return thereof, and the validity of the ordinance as levying a tax under general law have been adequately discussed by the chancellor, and we agree with his reasoning and conclusions. In order that there may be no doubt as to the attitude of the court en banc, we definitely decide that the ordinance is not invalid for failure to provide compensation to employers required to collect and make return of the tax from employes' earnings as violating the fifth and fourteenth amendments to the Federal Constitution. We further decide that the ordinance as a taxing measure was passed pursuant to general law and, therefore, is not repugnant to the provisions of section 1 of article IX of the Constitution of Pennsylvania.

Now, June 18, 1948, the exceptions filed by plaintiffs to the decree nisi, conclusions of law and the discussion of the chancellor in the above-captioned cases are dismissed. Final decrees in each of the above-captioned cases are entered herewith.

### Final decree

And now, June 18, 1948, upon consideration of the foregoing case, it is ordered, adjudged and decreed as follows:

The bill in equity is dismissed at the cost of plaintiffs.